The AMERICAN LEGION, et al., Plaintiffs,

v.

Edward J. DERWINSKI, Secretary, United States Department of Veterans Affairs, et al., Defendants.

VIETNAM VETERANS OF AMERICA, et al., Plaintiffs,

v.

Edward J. DERWINSKI, Secretary, United States Department of Veterans Affairs, et al., Defendants.

Civ. A. Nos. 90–1808 SSH, 90–1809 SSH.

United States District Court, District of Columbia.

July 19, 1993.

Barton F. Stichman, Gershon H. Ratner, National Veterans Legal Services Project, Washington, DC, for plaintiffs.

Pamela J. Eppli, Theodore C. Hirt, U.S. Dept. of Justice, Civ. Div., Washington, DC, for defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are defendants' motion to dismiss or, in the alternative, for summary judgment; plaintiffs' motion to supplement the record; plaintiffs' second motion to supplement the record; plaintiffs' motion for discovery; defendants' motion for a protective order staying discovery pending a ruling on defendants' dispositive motion; and the motion by certain members of Congress to reconsider the Magistrate Judge's order denying leave to file a memorandum as *amici curiae*.[1] Upon consideration of the motions, the Court grants defendants' motion for summary judgment, grants in part plaintiffs' motion to supplement the record, and denies the remaining motions.

Summary judgment may be granted only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, all evidence and the inferences to be

---

1. On September 3, 1992, the Magistrate Judge issued a Report and Recommendation that resolved seven of the 11 pending nondispositive motions. The Magistrate Judge recommended that the Court resolve the remaining four nondispositive motions in conjunction with the dispositive motion. Both sides agree with this recommendation, as does the Court.

drawn from it must be considered in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment cannot be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Although findings of fact and conclusions of law are unnecessary in ruling on a summary judgment motion, the Court sets forth its reasoning. *See* Fed.R.Civ.P. 52(a).

### Background

Plaintiffs are The American Legion, Vietnam Veterans of America, and nine individually-named Vietnam veterans and widows of veterans.[2] Defendants are the Secretaries of the Department of Veterans Affairs (VA) and the Department of Health and Human Services (HHS), the Directors of the Centers for Disease Control (CDC) and its Center for Environmental Health and Injury Control, and the United States. Plaintiffs challenge defendants' action terminating a congressionally-mandated study to investigate any long-term health effects in Vietnam veterans that may have resulted from exposure to phenoxy herbicides, including Agent Orange. *See* Pub.L. No. 96–151, § 307(a)(1)(A), 93 Stat. 1097 (1979) (amended 1981, 1984), 38 U.S.C. § 219 note.[3] Plaintiffs seek a declaratory judgment that defendants' decision to cancel the study violated the authorizing statute and the Administrative Procedure Act (APA), 5 U.S.C. § 706. Plaintiffs also seek an injunctive order directing defendants to conduct the study.[4]

For two years following enactment of the authorizing statute, the VA's contractor for the study encountered significant difficulties identifying veterans who had actually been exposed to herbicides. As a result, in 1981 Congress loosened the requirement of actual exposure to allow the study to commence. *See* Pub.L. 97–72, 95 Stat. 1061 (1981). In January 1983, the VA entered into a contract with the CDC to design and execute the study. The CDC developed a protocol intended to identify discrete cohorts of veterans who were and were not likely to have been exposed to Agent Orange in Vietnam. The CDC planned to determine whether those likely to have been exposed suffered from any distinct health effects. By early 1984 the congressional Office of Technology Assessment (OTA) had approved the CDC's protocol as required by the authorizing statute. Section 307(a)(2)(A)(i), 38 U.S.C. § 219 note.

The CDC had qualified the study's potential within the protocol, noting that "[s]ince many of the proposed procedures are untested, modifications, indeed even a recommendation not to proceed with the Agent Orange study, may be required after pilot assessments." Erickson Decl. Ex. A at 11. Working with the United States Army and Joint Services Environmental Support Group to match military records of troop locations and herbicide spraying, the CDC found that the records were more deficient than it had anticipated. The data indicated that troops were often dispersed 20 kilometers from the main company's location records. In addition, records contained gaps of company locations for various days. Eventually, the CDC sought to adjust the original protocol in 1985. In response to the CDC's proposed changes, the OTA demanded a revised protocol. Furthering the OTA position, in January 1986, the chairmen of the House Veterans' Affairs

---

2. The individual plaintiffs are Bill Atwell, Harold A. Butler, Carol Delaney–Ridolfi, Julio Gonzalez, Marel J. Macki, Beverly Nehmer, Laura O'Callaghan, Daniel Orta, and Paul L. Sutton.

3. The statute requires in part that the Secretary of Veterans Affairs:

   design a protocol for and conduct an epidemiological study of any long-term adverse health effects in [Vietnam veterans] as such health effects may result from exposure to phenoxy herbicides (including the herbicide known as Agent Orange) and the class of chemicals

known as the dioxins produced during the manufacture of such herbicides.
   38 U.S.C. § 219 note (a)(1)(A).

4. In addition, plaintiffs seek an order requiring the VA, after completing the study, to review and amend disability and death compensation regulations as the study results warrant, and to readjudicate veterans' claims that have been denied but which might raise issues in light of the study's results or the amended regulations.

Committee and the Senate Committee on Veterans' Affairs requested the CDC to suspend activity on the principal study until after the OTA approved a new protocol.

In addition to the mandated OTA oversight, the authorizing statute charged the President with monitoring the Agent Orange exposure study to assure its scientific validity. Section 307(c), 38 U.S.C. § 219 note. As a result, an interagency council of Cabinet and subcabinet level officers known as the White House Domestic Policy Council (DPC) had organized a subgroup, the Agent Orange Working Group (AOWG). In early 1986, following the OTA's demand for a new protocol, the AOWG's Science panel convened a Subpanel on Exposure Assessment (Subpanel) to review the status of the study. The June 1986 Subpanel report and a companion pilot assessment disclosed a considerable potential for misclassification of exposed and non-exposed veterans. The study confirmed the difficulty of identifying reliable cohorts to examine. Subsequently, the AOWG Science panel concluded that an exposure study based on military records alone was not scientifically valid. The AOWG Science panel recommended that the CDC develop an independent verification method to determine the likelihood of veterans' exposure to Agent Orange.

Adopting the AOWG Science panel's recommendation in the summer of 1986, the CDC developed a validation study to verify the accuracy of exposure estimates based on military records. By measuring the 2,3,7,8–TCDD (dioxin) level in blood serum, the CDC could reasonably determine previous exposure to phenoxy herbicides. The study results showed no correlation between the military records' estimates of exposure to Agent Orange and the veterans' blood dioxin levels.

Based on the recommendation of the AOWG Science panel and the results of the blood dioxin verification study, the CDC concluded that a scientifically valid exposure

study could not be performed. In August 1987, after reviewing these findings, the OTA Agent Orange Advisory Panel, the AOWG Science panel, and the AOWG all recommended that the Agent Orange exposure study be cancelled. On October 9, 1987, the AOWG initiated the process for terminating the contracts of the CDC study. The DPC approved the AOWG recommendation on November 5, 1987. The AOWG informed the congressional committees that the study had "proved scientifically impossible to do." Beach Decl. Exs. G and H at 1.

Subsequently, on November 24, 1987, the VA requested a written report from the CDC regarding the recommendation that no scientifically valid study could be performed.[5] In December 1987, the VA Department of Medicine and Surgery conducted an independent review of the CDC's findings and endorsed the recommendation. The VA Administrator notified the House Veterans' Affairs Committee and the Senate Committee on Veterans' Affairs in a February 9, 1988, letter that:

no one has successfully identified a large enough group of Vietnam veterans known to have been exposed to Agent Orange or other herbicides to allow the preparation of a protocol and the conduct of an epidemiological study as required by Public Law 96–151. I must, therefore, advise you that no scientifically sound study can be undertaken and request that the VA be relieved of the requirement to do this research.

Hobson Decl. Ex. E at 1–2. On February 17, 1988, the VA notified the congressional committees that funds previously appropriated for the Agent Orange study would revert to the Treasury Department. Subsequently, Congress ordered those funds shifted to other veterans' studies "upon cancellation of that contract." Pub.L. No. 100–687, § 1201, 102 Stat. 4105, 4125 (1988).

*Discussion*

In response to plaintiffs' claims contesting the termination of the study, defendants con-

---

**5.** Defendants cite this information as evidence that the VA made the ultimate decision to cancel the study. *See* Defendants' Reply to Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment at 6. However, this material does not appear within the administra-

tive record submitted by defendants or the supplemental exhibits which they provide. Rather, this information is presented in Plaintiffs' Exhibit 28. The Court, however, supplements the record with Plaintiffs' Exhibit 28. *See infra* part II.B.

tend that they are entitled to summary·judgment on two grounds.[6] First, defendants claim that Congress ratified the decision to cancel the study. Second, they argue that their actions were rational and otherwise in accordance with law, and therefore did not violate the APA. The Court first addresses defendants' ratification claim and then examines the alleged APA violations.

## I. Congressional Ratification

■ Defendants claim that they are entitled to summary judgment because Congress approved the decision to cancel the exposure study in 1988. Defendants contend that Congress ratified the cancellation when it transferred the funds originally appropriated for the Agent Orange exposure study to other veterans' studies. Plaintiffs assert that defendants have failed to satisfy the heavy burden required to demonstrate ratification by appropriation.

In *Associated Electric Cooperative, Inc. v. Morton,* this Circuit held that "ratification by appropriation will not be found unless prior knowledge of the specific disputed action can be clearly demonstrated and the appropriation plainly shows 'a purpose to bestow the precise authority which is claimed'." *Associated Elec. Coop. Inc. v. Morton,* 507 F.2d 1167, 1174 (D.C.Cir.1974) (citations omitted), *cert. denied,* 423 U.S. 830, 96 S.Ct. 49, 46 L.Ed.2d 47 (1975). When Congress reappropriated the funds from the Agent Orange study, it made no reference to repealing the authorizing statute. Pub.L. No. 100–687, § 1201, 102 Stat. 4105, 4125 (1988). Viewing the evidence in the light most favorable to plaintiffs, the Court finds that there is a genuine issue of material fact in dispute as to whether Congress had the requisite purpose to repeal the substantive law which authorized the study. Thus, the Court concludes that summary judgment on the basis of defendants' congressional ratification argument is inappropriate.[7]

## II. Alleged Violations of the APA [8]

Under the APA, reviewing courts generally must examine "final agency action." 5 U.S.C. § 704. Deferring judicial intervention until after the agency's final action permits the full exercise of the administrative process.

■ "[T]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985). The final agency action in this case may be characterized as an informal one, and the Court will set it aside only if it is " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements." *Citizens To Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971) (*citing* 5 U.S.C. § 706(2)(A), (B), (C), (D)). This standard is highly deferential. *See, e.g., Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). Moreover, reviewing courts are to defer to reasonable agency interpretations of statutory schemes when the authorizing

---

**6.** Defendants also move to dismiss, claiming that the CDC's design and methodology choices are committed to agency discretion and not subject to judicial review. *See* 5 U.S.C. § 701(a)(2). Plaintiffs deny that they challenge the legality of the CDC's actions. Although the Court finds that plaintiffs do challenge the CDC's actions, they do so only in an effort to establish that defendants acted arbitrarily and capriciously in concluding that no Agent Orange study could be scientifically valid. Therefore, the Court denies defendants' motion to dismiss.

**7.** Upon consideration of the motion by certain members of Congress to reconsider the Magistrate Judge's order denying leave to file a memo-randum as *amici curiae,* the Court upholds the order because it is not "clearly erroneous or contrary to law." *See* Fed.R.Civ.P. 72(a).

**8.** Because neither the authorizing statute nor legislative history indicates any congressional intent to create a private cause of action under the Agent Orange exposure study statute, the Court does not recognize such a right. *See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 13–15, 101 S.Ct. 2615, 2622–2624, 69 L.Ed.2d 435 (1981). As a result, plaintiffs' claims that defendants violated the authorizing statute are governed by the APA. 5 U.S.C. § 706(2)(A).

language is silent or ambiguous. *See Chevron, U.S.A., Inc. v. National Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).

As a threshold matter, the Court examines the parties' dispute regarding which governmental body made the final decision to cancel the Agent Orange exposure study. The Court then addresses the parties' conflict over the adequacy of the administrative record. Finally, the Court considers whether the decision to cancel the study was arbitrary, capricious, or otherwise not in accordance with law.

### A. Final Agency Action

■ First, plaintiffs contend that determining which body made the decision to cancel the study, the DPC or the VA, is a genuine issue of material fact that precludes summary judgment. In their initial statement of material facts, defendants claimed that the DPC made the decision to cancel the study. In their amended statement of material facts, however, defendants withdrew this contention. Instead, they assert that the VA Administrator's decision to terminate the study was the final agency action reviewable by this Court.[9] Plaintiffs, however, claim that during a meeting on November 5, 1987, the DPC made the decision to cancel the Agent Orange exposure study. This DPC decision, plaintiffs assert, violates the statutory authority which restricts cancellation of the study to the VA Administrator. *See* Section 307(a)(3), 38 U.S.C. § 219 note.[10] At the least, they claim that defendants' reversal regarding the finality of the DPC action is sufficient to create a genuine issue of material fact.

It is well settled that courts generally review final agency action which is the last, legal administrative action. *See, e.g., Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 882, 110 S.Ct. 3177, 3185, 111 L.Ed.2d 695 (1990). Courts are averse to reviewing action prior to agency completion. Viewing the facts in the light most favorable to the plaintiffs, the Court assumes that the DPC made a decision to cancel the CDC study and to notify Congress thereof. However, this action by the DPC is not inconsistent with the VA's retention and execution of the final, legal authority to cancel the Agent Orange exposure study. Following the DPC decision, on November 24, 1987, the VA requested a written report from the CDC with all data recommending cancellation of the study.[11] In December 1987, the VA Department of Medicine and Surgery conducted an independent study of the CDC's findings and concluded that no Agent Orange exposure study could be performed in a scientifically valid manner. The VA Administrator informed Congress in a

---

**9.** The Court rejects plaintiffs' attempt to estop defendants from amending their statement of facts. Plaintiffs argue that if defendants recant earlier statements they thereby create a material issue of fact. *See Pyramid Sec. Ltd. v. IB Resolution, Inc.,* 924 F.2d 1114, 1123 (D.C.Cir.1991) ("Courts have long held that a party may not create a material issue of fact simply by contradicting its prior sworn testimony." (citation omitted)), *cert. denied,* —— U.S. ——, 112 S.Ct. 85, 116 L.Ed.2d 57 (1991). Defendants claim that their misstatements do not contradict sworn declarations but were "arguments contained in defendants' legal memoranda" that "resulted from honest error" on counsel's part. *See* Defendants' Opposition to Plaintiffs' Motion to Estop Defendants at 15. It is undisputed that the VA Administrator had the sole statutory authority to cancel the study and that his letter of February 9, 1988, was the final action taken in announcing the cancellation. As such, defendants "offer persuasive reasons for believing the supposed correction." *Pyramid,* 924 F.2d at 1123. Therefore, the Court permits defendants' proposed amendments.

Even if the Court were to estop defendants from amending their statement of facts, the Court would still find that there is no genuine issue of material fact in dispute. The Court finds that, regardless of what the Beach declaration states that the DPC decided to tell Congress or how the Hobson declaration characterizes the VA's action, the VA nevertheless ultimately exercised its sole legal authority to cancel the study.

Plaintiffs also raise other facts purportedly in dispute, but the Court finds that they are likewise not material.

**10.** The cancellation provision reads in part: "The study ... shall be continued for as long ... as the Administrator may determine reasonable in light of the possibility of developing through such study significant new information on the long-term adverse health effects of exposure to dioxins." 38 U.S.C. § 219 note.

**11.** *See supra* note 5.

February 9, 1988, letter of the decision that no scientifically valid study could be performed.

Had the VA not acted following the DPC decision to cancel, plaintiffs might have had a valid claim that the DPC made the final decision to cancel the study. However, the record demonstrates that the VA exercised the ultimate, binding decision to cancel the Agent Orange exposure study in February 1988. As plaintiffs and defendants recognize, the VA had the sole legal authority to terminate the Agent Orange exposure study. At the time that he chose to cancel the study, the VA Administrator could have used his power to continue the study regardless of the DPC finding. Moreover, even assuming that the DPC cancelled the CDC study, the VA could have initiated a new round of protocols to pursue the Agent Orange exposure study. Thus, the VA decision terminating the study was the final agency action, and it is reviewable by this Court. *See* 5 U.S.C. § 704.

B. Adequacy of the Administrative Record

Secondly, plaintiffs claim that even if the VA made the final agency action, the administrative record is insufficient for effective judicial review and they seek to amend it. Plaintiffs seek to augment the record with supplemental documents and declarations which they claim demonstrate that defendants acted arbitrarily and capriciously in concluding that no scientifically valid study could be conducted. Plaintiffs also assert that some of the proposed supplemental exhibits reveal defendants' failure to consider relevant factors. Others, they contend, demonstrate that defendants relied on irrelevant considerations. Still others, according to the plaintiffs, provide important background information for the Court. Additionally, plaintiffs seek discovery primarily to inquire into any possibly improper DPC or White House pressures on the VA decision to cancel. Defendants contend, however, that the administrative record before the Court is adequate for effective judicial review.[12]

It is well established that courts are generally to review agency action based solely on the administrative record provided by the agency. *See, e.g., Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) ("The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."); *Environmental Defense Fund, Inc. v. Costle,* 657 F.2d 275, 286 (D.C.Cir.1981) ("There is no occasion for a judicial probe beyond the confines of a record which affords enough explanation to indicate whether the agency considered all relevant factors."). In addition, that record must be the one that was before the decisionmaker. *See, e.g., Walter O. Boswell Memorial Hosp. v. Heckler,* 749 F.2d 788, 792 (D.C.Cir.1984) ("If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision.").

Courts have identified certain limited occasions that may allow the addition of supplemental information to the record. Among other reasons, the record may be supplemented:

(1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly....

*Esch v. Yeutter,* 876 F.2d 976, 991 (D.C.Cir. 1989) (footnote omitted). Moreover, the Ninth Circuit has found that the record may be supplemented when additional information "fully explicate[s] [the agency's] course of conduct" in reaching its decision. *Asarco, Inc. v. EPA,* 616 F.2d 1153, 1160 (9th Cir. 1980).

The Court finds that the approximately 2,000–page administrative record contains the VA Administrator's articulated explana-

---

12. Asserting that some documents were inadvertently omitted from the original record, defendants supplemented the record with five (Plaintiffs' Exhibits 14, 16, 23, 25, and 27) of the 29 documents plaintiffs seek to admit as well as two other documents.

tion for his decision to cancel the exposure study. The record also includes the respective recommendations of the VA Department of Medicine and Surgery, the CDC, the OTA, and the AOWG Science Subpanel which were before the VA Administrator when he chose to terminate the study. The record includes, but is not limited to, evidence that defendants considered the relevant factors in selecting which veterans to study and in choosing the geographical area and time period to examine. It also contains defendants' reasoning for the necessity and relevance of the blood dioxin verification study. Plaintiffs' supplemental documents and declarations primarily challenge the scientific merits of the decision to cancel. Plaintiffs' other exhibits fail to contribute information pertinent to defendants' action or provide only peripheral background information. Accordingly, plaintiffs' motion to add documents to the record is largely denied.

The Court does, however, grant in part plaintiffs' motion to supplement the record. Plaintiffs' Exhibit 28 provides relevant information regarding the chain of events in the VA's decision to terminate the study. The decision to terminate the Agent Orange exposure study involved numerous agencies and much interagency communication. Included in Plaintiffs' Exhibit 28 is the VA's request for a written report containing the CDC's data, which aids in fully explicating the VA's "course of conduct." *See Asarco, Inc.*, 616 F.2d at 1160. No other exhibit offered by plaintiffs yields information not already in the record regarding central steps in the VA's decisional process. Thus, for the limited purpose of more fully explicating the VA's decision, the Court supplements the administrative record only with Plaintiffs' Exhibit 28.[13] The Court therefore grants in part and denies in part plaintiffs' motion to supplement the record and denies plaintiffs' second motion to supplement the record.

■ Courts may grant discovery in agency review cases when, for example, there is a "strong showing of bad faith or improper behavior." *Citizens To Preserve Overton Park*, 401 U.S. at 420, 91 S.Ct. at 825. Plain-

tiffs, however, submit no evidence that the VA Administrator relied on irrelevant factors in cancelling the study. They proffer only speculation that the DPC or the White House exerted pressure on the VA Administrator. Accordingly, the Court denies plaintiffs' motion for discovery.

**C. Defendants' Actions Were Not Arbitrary and Capricious Nor in Violation of the Law**

■ Plaintiffs claim that defendants violated the APA by acting arbitrarily and capriciously and not in accordance with law. *See* 5 U.S.C. § 706(2)(A). The Court disagrees. As noted, Rule 52(a) of the Federal Rules of Civil Procedure specifically makes findings and conclusions unnecessary in ruling on a motion for summary judgment, but the Court elects to address plaintiffs' more meritorious arguments.

*1. Not Arbitrary and Capricious*

Among the actions which plaintiffs challenge is defendants' determination that a scientifically valid study would require independent verification to corroborate the exposure estimates based on military records. Additionally, plaintiffs challenge defendants' finding, based on the blood dioxin study, that no scientifically valid study could be performed. Finally, plaintiffs challenge the decision to cancel the study. Defendants argue that the scientific conclusions and the VA's decision to cancel the study were rational and reasoned.

■ The scope of review is "narrow" under the arbitrary and capricious standard. *Motor Vehicle Mfrs. Ass'n. Inc.*, 463 U.S. at 43, 103 S.Ct. at 2866. The reviewing court presumes agency action to be valid. *Citizens To Preserve Overton Park*, 401 U.S. at 415, 91 S.Ct. at 823 ("Certainly, the [agency's] decision is entitled to a presumption of regularity."). Moreover, a court may not substitute its judgment for that of the agency. *Id.* at 416, 91 S.Ct. at 823. Indeed, the Court need not decide if the decision to cancel the study is supported by a preponderance of the evidence or even whether it is supported by

---

13. Even without Exhibit 28 in the administrative record, the Court would still hold that the VA

made the final decision to cancel the Agent Orange study.

substantial evidence. Rather, the Court must sustain the decision if it has a rational basis in the evidence. *See Ethyl Corp. v. EPA,* 541 F.2d 1, 37 (D.C.Cir.) (en banc), *cert. denied,* 426 U.S. 941, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976).

■ In addition, under the APA a reviewing court must not only consider the final agency action but also "preliminary" and "intermediate" agency actions. 5 U.S.C. § 704. As a result, the Court examines challenges to the scientific conclusions on which the VA relied. In examining such challenges to decisions involving an agency's area of special expertise at the frontiers of science, "a reviewing court must generally be at its most deferential." *Baltimore Gas & Elec. Co. v. National Resources Defense Council,* 462 U.S. 87, 103, 103 S.Ct. 2246, 2255, 76 L.Ed.2d 437 (1983); *see also Ethyl Corp.,* 541 F.2d at 36 ("We must look at the [agency's] decision not as the chemist, biologist or statistician that we are qualified neither by training nor experience to be, but as a reviewing court exercising our narrowly defined duty of holding agencies to certain minimal standards of rationality.").

One of the scientific conclusions that the plaintiffs challenge is the CDC's 1986 rejection of the scientific validity of exposure estimates based on military records. Plaintiffs contend that this conclusion is an arbitrary reversal from the CDC's original protocol. However, in concluding against sole reliance on the military records, the CDC considered the results of the June 1986 Subpanel report. The Subpanel report delineated three years of new data compiled by abstracting military records in an effort to match troop locations with herbicide spraying. This additional evidence on the unreliability of the military records established a rational basis for the CDC's 1986 decision that exposure estimates based on such records would not create scientifically valid exposure cohorts.

Plaintiffs also challenge the CDC's blood dioxin verification method and its finding that the study results indicated no scientifically valid exposure study could be performed. At the heart of plaintiffs' arguments, however, is a challenge to the scientific merit of the CDC's research rather than the rationality of its conclusion. Assuming, but not deciding, that plaintiffs may challenge the scientific merit, *see supra* note 6, the Court finds that the CDC's methodology and research exhibit reasoned decisionmaking and provide a rational basis for defendants' conclusion that a meaningful scientific study could not be performed.

In addition, plaintiffs also challenge the VA's decision to cancel the study. As noted, the authorizing statute provides that "[t]he study ... shall be continued for as long ... as the Administrator may determine reasonable in light of the possibility of developing through such study significant new information on the long-term health effects of exposure to dioxins." Section 307(a)(3), 38 U.S.C. § 219 note. Having considered the evidence and recommendations of the AOWG, the CDC, the OTA Agent Orange Advisory Panel, and the VA's Department of Medicine and Surgery, the Administrator concluded that no scientifically valid study could be performed. The Court finds that this decision to cancel was reasoned and rational. Thus the Court finds that neither the scientific conclusions leading up to the VA's decision to terminate the study nor the Administrator's final decision were "arbitrary and capricious." [14]

### 2. *Not Otherwise in Violation of Law*

■ Plaintiffs also assert that defendants' interpretation of the statutory scheme violates the authorizing statute and consequently the APA's requirement that agency action be in accordance with law. *See* 5 U.S.C. § 706(2)(A). They contend that defendants' failure to submit an initial report to Congress explaining the "results thus far obtained under the study" is one such violation. Section 307(a)(3), (b)(2), 38 U.S.C. § 219 note. Defendants claim that in mandating such a report, Congress did not intend to require commencement of the study if no such study could be conducted with scientific

---

**14.** The Court rejects as meritless plaintiffs' other claims that defendants acted in an arbitrary and capricious manner.

validity. Instead, defendants argue that Congress required the report as a progress account, which defendants submitted.

"[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781. The Court finds that defendants' construction of the statute was a "reasonable interpretation" of the provision. *Id.* at 844, 104 S.Ct. at 2782. The statute requires the President to assure the study's scientific validity. Section 307(c), 38 U.S.C. § 219 note. In light of this requirement, defendants' interpretation of the mandated report as a program update is reasonable. Thus, the Court finds that defendants committed no statutory violation that would breach the APA.[15] Accordingly, the Court grants defendants' motion for summary judgment.[16]

### Conclusion

For the reasons stated, the Court grants in part plaintiffs' motion to supplement the record as to Plaintiffs' Exhibit 28 and denies the remainder of the motion. The Court also denies plaintiffs' second motion to supplement the record, plaintiffs' motion for discovery, and the motion by certain members of Congress to reconsider the Magistrate Judge's order denying leave to file a memorandum as *amici curiae*. However, finding no genuine issue of material fact in dispute and finding in favor of defendants as a matter of law, the Court grants defendants' motion for summary judgment. An appropriate Order accompanies this Opinion.

### ORDER

For the reasons stated in the Court's accompanying Opinion, it hereby is

ORDERED, that plaintiffs' motion to supplement the record is granted in part and denied in part, and the administrative record is supplemented with Plaintiffs' Exhibit 28. It hereby further is

ORDERED, that plaintiffs' second motion to supplement the record is denied. It hereby further is

ORDERED, that plaintiffs' motion for discovery is denied. It hereby further is

ORDERED, that the motion by certain members of Congress to reconsider the Magistrate Judge's order denying leave to file a memorandum as *amici curiae* is denied. It hereby further is

ORDERED, that defendants' motion for a protective order staying discovery pending a ruling on defendants' dispositive motion is denied as moot. It hereby further is

ORDERED, that defendants' motion for summary judgment is granted and the case is dismissed.

SO ORDERED.

---

15. The Court rejects plaintiffs' other statutory violation claims.

16. As the Court grants defendants' motion for summary judgment, it denies as moot defen-

dants' motion for a protective order staying discovery pending a ruling on the dispositive motion.