MERIDEN COMMUNITY ACTION
AGENCY, et al., Plaintiffs,

v.

Donna E. SHALALA, Defendant.

CAMPESINOS UNIDOS, INC., Plaintiff,

v.

Donna E. SHALALA, Defendant.

Civ. A. Nos. 94–1910(PLF), 95–0073(PLF).

United States District Court,
District of Columbia.

March 17, 1995.

Edward T. Waters, Washington, DC, for plaintiffs.

Daniel F. van Horn, Asst. U.S. Atty., Washington, DC, for defendant.

## OPINION

FRIEDMAN, District Judge.

This case came before the Court on March 9, 1995, for argument on plaintiff Meriden Community Action Agency's motion for summary judgment, plaintiff Campesinos Unidos, Inc.'s motion for a preliminary injunction, which by stipulation of the parties is being treated as a motion for summary judgment, and defendant's cross motion for summary judgment. The Court finds that there are no genuine disputes of material facts and that defendant is entitled to judgment as a matter of law.

## I. BACKGROUND

The Head Start Act and the regulations promulgated thereunder establish a program that provides comprehensive educational, health, nutritional, social and other services to low income children and their families. 42 U.S.C. §§ 9831 et seq.; 45 C.F.R. Part 1301 (1994). Under the Program, the Administration for Children and Families ("ACF"), which is a component of the United States Department of Health and Human Services ("HHS"), makes grants to local private non-profit and public agencies that in turn furnish Head Start services to its beneficiaries. In 1992, HHS issued rules amending the regulations that implement the provisions of the Head Start Act. One amendment changed the procedures by which, prior to denial of an application for refunding, a Head Start grantee is provided with a hearing. 45 C.F.R. § 1303.15 (1994). Another changed the regulation relating to the payment of attorneys' fees from grant funds in connection with such hearings. 45 C.F.R. § 1303.3(a) (1994). Plaintiffs in these consolidated cases request the Court to set aside the 1992 amendments to the regulations as being arbitrary, capricious, an abuse of discretion and not in conformity with law.

The plaintiffs are Head Start grantees who appealed ACF's decision to deny refunding of their Head Start programs to the Departmental Appeals Board ("DAB"). In November 1993, the ACF conducted an on-site program review of plaintiff MCAA and found that it failed to comply with Head Start

performance standards. *See* Exhibit 15 to Plaintiff MCAA's Motion For Summary Judgment ("MCAA Mot."). On March 15, 1994, ACF informed MCAA that it intended to deny refunding of MCAA's program for the 1994–95 program year and that MCAA could appeal the denial to the DAB. *Id.* On November 29, 1994, the DAB upheld ACF's denial of refunding to MCAA. Declaration of Kevin Hughes, MCAA's Mot. at Ex. 10 ¶ 13. On January 1, 1995, MCAA's Head Start program was transferred to the City of Meriden, which will act as an interim grantee for the remainder of the school year. *Id.*

On July 28, 1994, ACF informed plaintiff CUI that it was denying CUI's request for continued funding of its migrant Head Start program because an on-site program review conducted by ACF showed that CUI had failed to comply with Head Start performance standards. *See* Exhibit 13 to CUI's Motion for Preliminary Injunction ("CUI's Mot."). On August 2, 1994, CUI appealed ACF's decision to the DAB. CUI's Mot. at Ex. 14. On September 8, 1994, CUI filed a motion with the DAB to dismiss ACF's decision because, it argued, ACF had failed to provide CUI with an opportunity to cure the purported deficiencies uncovered in the on-site program review. CUI's Mot. at Ex. 15. The DAB denied CUI's motion, but ordered ACF to provide a more definite statement of how CUI failed to comply with performance standards. CUI's Mot. at Ex. 16. The DAB is scheduled to conduct a hearing on CUI's appeal later this month.

Plaintiff MCAA brought this suit on August 31, 1994, seeking, among other relief, a declaration that the 1992 amendments to 45 C.F.R. Part 1303 are arbitrary, capricious, an abuse of discretion and in violation of law and therefore are null and void. On November 15, 1994, the Court denied MCAA's motion for a preliminary injunction. Plaintiff CUI brought its action on January 13, 1995, and also seeks a declaration that the amended regulations are arbitrary, capricious, an abuse of discretion and in violation of law and that they therefore may not be applied in the upcoming hearing.

## II. DISCUSSION

HHS' 1992 Head Start regulations were promulgated under the informal rule-making procedures of the Administrative Procedure Act. 5 U.S.C. § 553. HHS therefore was required to provide notice to the public of its proposed rules, give the public an opportunity to comment on the proposed rules and, after considering the relevant matters presented, issue the rules along with a "concise general statement of their basis and purpose." 5 U.S.C. §§ 553(b), (c). An agency's action in promulgating rules under section 553 may be set aside if found to be "arbitrary, capricious, an abuse of discretion, or otherwise contrary to law." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971). In considering a challenge on this basis, the Court must determine "whether the decision was based on consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* at 416, 91 S.Ct. at 823. The Court must make a "searching and careful" inquiry, but "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.* Whether an agency's action was arbitrary and capricious is determined on the basis of the administrative record that was before the agency when it acted and not on the basis of "some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973).

The plaintiffs challenge two sections of the 1992 regulations: section 1303.3(a)(1), which allows Head Start grantees to use some federal grant funds to pay the attorneys' fees incurred in an administrative appeal of a proposed denial of refunding, and section 1303.15(b)(1), which sets out the procedures by which an appeal of a proposed denial of refunding is conducted. For the reasons that follow, the Court concludes that HHS did not act arbitrarily, capriciously or in violation of the law. Plaintiffs' challenges therefore must fail.

### A. Attorneys' Fees Issue

Before the 1992 amendments to the rules, a grantee could use grant funds to

retain an attorney but could not pay the attorney more than "$100.00 per day without the express written approval of the responsible HHS official." 45 C.F.R. § 1303.3(a) (1990). The amended rules allow a grantee to charge a maximum of $250.00 per day against its grant to retain an attorney. 45 C.F.R. § 1303.3(a)(1) (1994). This cap on attorney's fees is adjusted annually to reflect cost-of-living increases. *Id.* In contrast to the pre-amendment rule, however, the new cap cannot be waived upon written approval of an HHS official. The amendments also purport to clarify the prior regulations by explicitly stating that the grantee may not charge the fees of more than one attorney to the program grant. *Id.*

Plaintiffs argue that by rescinding the rule that permitted HHS to waive the $100.00 per day attorney's fee limit HHS changed its settled course of behavior. Plaintiffs have offered several examples of HHS' granting waivers upon request. *See* MCAA's Mot. at Exs. 6, 7, 7a, and 8–8b; *see also,* Deposition of Robert A. Dublin ("Dublin Dep.") at 6–15. Plaintiffs argue that their evidence demonstrates that HHS had a long-standing policy to routinely grant such waivers.

Defendant responds that no consistent, agency-wide policy with respect to waivers existed under the prior regulations. She asserts that requests were handled in varying manners by HHS regional offices rather than on a consistent basis by HHS headquarters. For example, there were regional variations in the amount of fees that could be charged to the program grant pursuant to a waiver. *See* Dublin Dep. at 6–15. Furthermore, she asserts that many grantees did not request waivers of the fee limit. *Id.* On the other hand, counsel for defendant conceded in open court that, at least in recent years, whenever a waiver was requested, it was granted.

■ Where an agency changes a settled course of behavior "by rescinding a rule[, it] is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). There is a presumption

"against changes in current policy that are not justified by the rulemaking record." *Id.* To make out their claimed APA violations, plaintiffs therefore must prove that there was a settled course of behavior, that there has been a change in the settled course of behavior, and that the change was not sufficiently justified in the record.

■ The Court does not believe that defendant has sufficiently rebutted plaintiffs' evidence that HHS consistently granted waivers upon request. The Court therefore concludes that the existence of the waiver rule and the consistent practice of permitting waivers upon request establishes a settled course of conduct by HHS. Because the new regulations do not permit a waiver of the maximum attorneys' fees, they change this settled course of conduct. The Court nevertheless agrees with defendant that even though HHS changed a settled course of behavior, HHS gave rational reasons for the policy change in both the Notice of Proposed Rulemaking and in the preamble to the Final Rule, and that the policy change is justified by the rulemaking record. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. at 42, 103 S.Ct. at 2866. The Court is satisfied that the Department has articulated permissible reasons for its change of position, and that the new position is consistent with the law. *Public Citizen v. Steed,* 733 F.2d 93, 99 (D.C.Cir. 1984) (quoting *NAACP v. FCC,* 682 F.2d 993, 998 (D.C.Cir.1982)).

In its Notice of Proposed Rulemaking, HHS clearly stated that it was proposing to eliminate the waiver provision and articulated reasons for the proposed change:

> We are proposing to remove the existing authority to waive the fee limitation because it has generated excessive disputes. It is believed that limiting the fees to the usual and customary charges, not to exceed $250.00 per day, and indexing that limitation to the national inflation index, or CPI, is reasonable. Moreover, this will result in a uniform and equitable application of the provision throughout the country.

57 Fed.Reg. 3394, 3395 (1992). The Notice of Proposed Rulemaking also stated that attorneys' fees were being limited because "the funds involved are scarce social service funds appropriated by Congress to provide valuable services to a population in need of them." *Id.* The Notice also urged the private bar "to be similarly mindful of the nature of the programs involved and of the limited funds available for these programs," thus suggesting that the private bar should assist in providing *pro bono* or reduced fee legal services to Head Start Programs within the program's financial limits. *Id.* The Court finds that the reasons articulated by HHS were reasonable and based on relevant policy and practical considerations.

Plaintiffs argue, however, that the amendments to the rules are based on reasons that only find support outside the rulemaking record, namely, the review and analysis of grantee appeals that did not result in any written report and the *post hoc* explanations by Robert Dublin, an HHS attorney. The Court disagrees.

 It is not fatal to defendant's position that no written report was produced setting out the results of HHS' review and analysis of actual grantee appeals. The analysis which was presented orally during meetings held with the Deputy Associate Commissioner of the Head Start Bureau and his staff, indicated that the "current system … required large expenditures of program funds to pay for retired Administrative Law Judges, lawyers hired on behalf of the grantee or delegate agency, travel, court and transcription costs." A.R. at 364. Even though the review and analysis of grantee appeals that occurred in meetings did not lead to the creation of a written document for the rulemaking record, it was nevertheless legitimate for HHS to rely on the review to support its proposed and adopted rules so long as the record reflects a rational basis for the decision. *FCC v. National Citizens Comm. For Broadcasting,* 436 U.S. 775, 803, 98 S.Ct.

2096, 2116, 56 L.Ed.2d 697 (1978); *Association of Data Processing Service Organizations, Inc. v. Board of Governors of Federal Reserve System,* 745 F.2d 677, 684 (D.C.Cir. 1984). Such was the case here. The factual determinations involved in the Secretary's decision to eliminate the waiver were largely of a judgmental or predictive nature (for example, the judgment that community support would likely assure adequate representation). Therefore, "complete factual support in the record for the [Secretary's] judgment or prediction is not possible or required." *FCC v. National Citizens Comm. For Broadcasting,* 436 U.S. at 814, 98 S.Ct. at 2121.

 As for Robert Dublin's deposition testimony that waiver requests caused excessive time to be devoted to determining what an appropriate fee ought to be, Dublin Dep. at 22, 30, it merely serves to explicate the grounds for the decision articulated in the Notice of Proposed Rulemaking and the Final Rule by explaining the considerations that arose in the review of actual grantee appeals.[1] A reviewing court may legitimately consider such matters outside the record of rulemaking to determine whether the agency considered all the relevant factors and fully explicated the grounds for its decision. *See Camp v. Pitts,* 411 U.S. at 143, 93 S.Ct. at 1244; *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. at 420, 91 S.Ct. at 825; *American Legion v. Derwinski,* 827 F.Supp. 805, 811–12 (D.D.C.1993).

The record of the rulemaking shows minimal opposition to the proposed changes or to the reasons HHS had given for proposing the changes. Although the Head Start grantees were provided notice of the proposed changes, only six parties voiced opposition to the proposed $250.00 per day cap. A.R. at 2–22. The commenters generally welcomed the increase in the per day limit, but these individuals felt the limit was too low and disparaged the proposed elimination of the

---

1. Mr. Dublin also testified at his deposition that on the basis of the agency's previous experiences with the program HHS was convinced that the local legal community would assist its Head Start programs by providing *pro bono* legal services or reduced fee services. He testified that even

when waivers were granted attorneys' fees that could be charged against the grant had always been substantially below normal fee rates but that this fact did not result in lack of representation for the grantees. Dublin Dep. at 35–36.

waiver of that limit. A.R. at 5, 11, 15–17, 21. In the Final Rule, HHS acknowledged the concerns expressed about the attorneys' fees cap, but concluded that it "had no convincing evidence that a maximum allowance of $250.00 per day will seriously disadvantage grantees." 57 Fed.Reg. 59260, 59261 (1992). In addition, defendant has also pointed out that no lawyers, law firms or associations of legal professionals submitted comments regarding HHS' request that the private bar be cognizant that the program had limited funds to pay attorneys' fees. In the face of limited evidence to the contrary, HHS concluded that "[t]he community support that Head Start enjoys should provide any assistance grantees might need to secure effective representation." *Id.*

■ The Court finds that HHS' policy choice to limit the allowable attorneys' fees to $250.00 per day was reasonable. Given its responsibility for determining how best to utilize the scarce social service funds appropriated by Congress for the Head Start Program, its concern for reducing the cost of appeals, the few comments it received regarding the limit and its judgment that community support should secure effective representation, HHS did not act in an arbitrary and capricious manner when it determined to impose a $250.00 daily limit adjusted for inflation. Nothing in the record demands a contrary result and the Department's decision, judged in light of the facts then available to it, was reasonable. *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 553–54, 98 S.Ct. 1197, 1216–17, 55 L.Ed.2d 460 (1978). Furthermore, the Court finds that when it promulgated the regulations the Department adequately addressed the few comments it received opposing the elimination of the fee waiver. *See Brown, et al. v. Secretary of Health and Human Services,* 46 F.3d 102, 110 (1995).

■ Plaintiffs also make an equal protection claim with respect to the attorneys' fees rule, arguing that there is no rational reason that fund recipients who are involved in proceedings involving suspension, termination, or denial of refunding should face a cap on legal fees, while recipients involved in proceedings not involving these issues, such as ones involving cost disallowance (as well as grantees under other similar HHS programs), do not face a similar limitation. Because the difference in treatment between grantees involves no suspect class or fundamental right, it will survive plaintiffs' equal protection attack if the classification is rationally related to a legitimate governmental purpose. *See Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 457–58, 108 S.Ct. 2481, 2486–87, 101 L.Ed.2d 399 (1988); *Pennell v. City of San Jose,* 485 U.S. 1, 14–15, 108 S.Ct. 849, 858–59, 99 L.Ed.2d 1 (1988); *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). The Court concludes that the attorneys' fee regulation has a rational relationship to the appropriate governmental purpose of determining how to expend the scarce social service funds available in the Head Start program and therefore does not violate plaintiffs' equal protection rights.[2]

### B. Appeals

■ Plaintiffs also claim that the portion of the new rules transferring jurisdiction over appeals of denial of refunding actions to the DAB for informal hearing procedures reversed HHS' prior interpretation of the Head Start Act as requiring "on the record" hearings conducted pursuant to the Administrative Procedure Act. *See* 5 U.S.C. § 554. Defendant responds that formal APA proceedings were never required nor provided under the Head Start Act. The Court agrees with defendant.

The pre-amendment rules established a three stage appeals process. In the first stage, a hearing was conducted before either

**2.** The Court also rejects plaintiffs' claims that the rules violate HHS' obligation to contribute 80% to a grantee's Head Start budget, 42 U.S.C. § 9835, that HHS violated its own regulations and Office of Management and Budget cost principles by promulgating the new regulations, 45

Fed.Reg. § 74.6 (1993); OMB Circular A–122, and that HHS changed its prior policy with respect to the use of program funds to pay for witness and expert costs. The Court agrees with defendant's analysis on each of these issues.

an active administrative law judge, a retired ALJ or, if neither was available, "a person deemed qualified by the Commissioner who was not directly involved in the action under review." 45 C.F.R. § 1303.24(a) (1990). After the hearing, the presiding officer would prepare an initial decision, which could be appealed to the HHS official who was authorized to make the grant in question. This official would make a final decision in the matter to "increase, modify, approve, vacate, or mitigate any terms, conditions, or other provisions imposed in the initial decision or ... remand the matter to the presiding officer for further hearing or consideration." 45 C.F.R. § 1303.25(c) (1990). The grantee could next request a review of ACF's final decision by the Commissioner, who would consider the reasons stated by the grantee for seeking review and could sustain, overrule or remand the final decision of the responsible HHS official. 45 C.F.R. § 1303.25(e) (1990). The 1992 amendments eliminated the three-stage appeal process and transferred jurisdiction over appeals from ACF to HHS' Departmental Appeals Board ("DAB"), which now renders the final agency decision after a hearing before a panel of three DAB members. 45 C.F.R. § 1303.15(b)(1) (1994); *see* 45 C.F.R. Part 16.

In the first instance, the dispute revolves around the correct reading of the preamble to the Final Rule adopting procedures for Head Start appeals in the 1975 regulations. It stated:

> It has been the position of OCD [the Office of Child Development in HHS' predecessor department, the Department of Health, Education & Welfare] that by the language of the Economic Opportunity Act, as amended, requiring a "full and fair hearing" the Congress intended an "adjudication required by statute to be determined on the record after opportunity for an agency hearing," under the Administrative Procedure Act, 5 U.S.C. 554. On the basis of that construction the Notice of Proposed RuleMaking prescribed the designation of an administrative law judge under 5 U.S.C. 3105 as the presiding officer of a full and fair hearing. However, the Civil Service Commission does not share this view of the Administrative Procedure Act and the like-

lihood of the timely appointment of an administrative law judge to conduct any particular hearing is remote, if, indeed, it is at all possible. The procedures, § 1303.3-5 and § 1303.4-6, therefore, in the interest of providing appellants with timely due process of law, and *until some more definitive answer might be obtained,* have been adopted to meet this situation. They continue to provide for the designation of an administrative law judge under section 3105, but add as alternatives the designation of a retired administrative law judge, or another person deemed qualified by the Director who was not directly involved in the action under review.

40 Fed.Reg. 25013, 25014 (1975); A.R. at 387 (emphasis added).

■ Plaintiffs argue that the preamble to the 1975 rule demonstrates that a formal APA hearing was required because the OCD, which they argue had the responsibility to interpret the Head Start Act, believed such a requirement existed. The Court, however, agrees with defendant that although the preamble notes the OCD's view that the Act requires formal APA hearings, the Secretary of Health, Education & Welfare (HHS' predecessor) did not adopt this policy. Rather, the Secretary declined to adopt the position espoused by OCD "until some more definitive answer might be obtained." 40 Fed.Reg. at 25014.

■ The procedures for appeals set forth in the prior Head Start regulations paralleled but were not identical to the requirements for formal APA hearings. *Compare* 5 U.S.C. § 554(d) *with* 45 C.F.R. § 1303.25(c) & (e) (1990); *see also* 5 U.S.C. § 556(c)(2); 45 C.F.R. §§ 1303.24 & 1303.35 (1990). They provided for informal adjudicatory proceedings rather than formal section 554 proceedings. For example, an "on the record" formal proceeding must be conducted by "(1) the agency; (2) one or more members of the body which comprises the agency; or (3) one or more administrative law judges appointed under [5 U.S.C. § 3105]." 5 U.S.C. § 556(b). By contrast, the prior rules permitted hearings to be conducted by an ALJ, but also allowed the presiding officer to be a retired

ALJ or another qualified individual. 45 C.F.R. § 1303.24(a). Indeed, as all parties concede, most of the hearings were in fact conducted by retired ALJ's. HHS' actual interpretation of the "full and fair hearing requirement," as reflected in the prior regulations and in practice under those regulations, was that no formal adjudication pursuant to 5 U.S.C. § 554 was necessary. The new regulations, which maintain the appeals process as informal proceedings, therefore do not change a consistent, longstanding interpretation of the Head Start Act.

■ The Court also concludes that HHS provided rational reasons supported by the record for transferring the appeals from ALJ's or retired ALJ's to the DAB and for eliminating a three-stage appeals process. HHS decided to use the DAB for Head Start appeals to "eliminate duplication and increase efficiency in government operations by reducing the time expended in preparing and holding an appeal," and to "provide a uniform, fair, and consistent appeal procedure." 57 Fed.Reg. 3394 & 3396 (1992). A comparison of the former and current procedures bears out defendant's position that HHS had sufficient information to determine that the new rules would meet these goals and that change from the old procedures was justified. Under the prior appeals rules, the Head Start program was one of the few programs in HHS that did not use the DAB, a board that was expressly created to handle administrative appeals within HHS. *See* 45 C.F.R. Part 16. By transferring jurisdiction over the appeals to the DAB and eliminating a three-tiered system, HHS could reasonably anticipate decreased duplication of functions and increased uniformity within HHS. In addition, HHS could reasonably determine that the prior appeals procedure with its three stages was inherently redundant, time consuming and costly. *See* Dublin Dep. at 16–18, 24.

The Court concludes that HHS had ample reasons and support for its amended rules and finds no reason to second guess the Department's decision on how to fashion its own rules of procedure. *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. at

543, 98 S.Ct. at 1211 (quoting *FCC v. Schreiber,* 381 U.S. 279, 290, 85 S.Ct. 1459, 1467, 14 L.Ed.2d 383 (1965); *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 143, 60 S.Ct. 437, 441, 84 L.Ed. 656 (1940)).

### C. Inadequate Notice And Opportunity To Comment On Proposed Rules

■ Plaintiffs contend that HHS violated section 9839(d) of the Head Start Act and section 553 of the APA by misleading interested parties about the nature and significance of the proposed amendments and thereby depriving them of an opportunity to comment on the amendments. Plaintiffs claim that HHS' statement that the proposed 1992 amendments to the Head Start regulations were simplifications that would benefit grantees created a false impression. *See* Information Memorandum from HHS to Head Start Grantees (Feb. 19, 1992), A.R. at 355. Defendant replies that HHS provided proper notice under the Head Start Act and the APA by publishing the proposed regulations in the Federal Register and timely sending them to each grantee. *Id.;* 57 Fed. Reg. 3394 (1992). Although plaintiffs criticize certain sentences of the Notice of Proposed Rulemaking, defendant argues that when read as a whole the Notice sets forth the purpose and effect of the amendments. The Court has read the Notice and agrees with defendant.

The Notice of Proposed Rulemaking published in the Federal Register stated that the purpose of the amendments was "to eliminate duplication and increase efficiency in governmental operations by reducing the time expended in preparing and holding an appeal, conducting a hearing and reaching a final decision." 57 Fed.Reg. at 3394. It stated that "[t]he most significant proposed change is to improve the show cause and hearings process for Head Start grantees by abolishing the current complex and costly procedures and utilizing the [DAB]," and that "this [Notice of Proposed Rulemaking] proposes to require that all allowable grantee appeals will be heard by the [DAB]." *Id.* The Notice also stated that "a number of significant changes" were proposed by the rule pertaining to the right to an attorney, attorneys' fees and travel costs, including a proposal "to

remove the existing authority to waive the fee limitation [to obtain] a uniform and equitable application of the provision throughout the country." 57 Fed.Reg. at 3395. Furthermore, the Notice clearly indicated that the Department was aware that the elimination of the waiver might result in grant funds failing to fully cover attorneys' fees charged in excess of the limitation. *Id.*[3]

The Court finds that the Notice is unmistakably clear; it lucidly explains the goals and likely effects of the proposed amendments. Neither the Notice of Proposed Rulemaking nor the Information Memorandum sent to Head Start grantees created a false impression and could not have misled anyone who reviewed their contents.

*D. CUI's Opportunity to Cure Defects In Its Head Start Program/Failure to Exhaust Administrative Appeals*

Plaintiff CUI argues that HHS failed to follow its own regulations prior to terminating CUI's program by not giving CUI sufficient opportunity to cure purported deficiencies that led to the funding termination. The Court need not reach this issue at this time. Because the DAB member presiding over CUI's appeal has not entered a final ruling in CUI's case, CUI has failed to exhaust its administrative appeals. The decision with respect to CUI therefore is not ripe for decision; CUI's argument regarding sufficient opportunity to cure is attacking an interlocutory ruling by the DAB.

## III. CONCLUSION

For all of the foregoing reasons, plaintiffs' motions for summary judgment and preliminary injunction will be denied and defendant's motion for summary judgment will be granted. An Order consistent with this Opinion is issued this same day.

### ORDER

Upon consideration of Plaintiff Meriden Community Action Agency's Motion For Summary Judgment, Plaintiff Campesinos Unidos, Inc.'s Motion For A Preliminary Injunction, which by stipulation of the parties is being treated as a motion for summary judgment, and Defendant's Cross Motion For Summary Judgment, and the responses and replies thereto, and for the reasons stated in the Court's accompanying Opinion, the Court finds that there are no genuine issues as to any material facts and that Defendant is entitled to judgment as a matter of law. Accordingly, it is hereby

ORDERED that Plaintiff Meriden Community Action Agency's Motion For Summary Judgment is DENIED; it is

FURTHER ORDERED that Plaintiff Campesinos Unidos, Inc.'s Motion For A Preliminary Injunction is DENIED; it is

FURTHER ORDERED that Defendant's Motion For Summary Judgment is GRANTED; it is

FURTHER ORDERED that judgment is entered in Defendant's favor in each of the above-captioned cases.

SO ORDERED.

---

3. Beyond the Notice, the memorandum that HHS sent to each Head Start grantee informs the grantees of the deadline for comments, attaches the Federal Register Notice of Proposed Rulemaking and states:

> The proposed new procedures will reduce reporting and paperwork requirements, remove unnecessary and duplicative provisions, and revise the language of the current regulation for clarity. The proposed revision of the current regulation simplifies the appeals process for Head Start grantees and current and prospective delegate agencies.

A.R. at 355.