**D.C. "Jasper" CARLTON,
et al., Plaintiffs,**

**v.**

**Bruce BABBITT, et al., Defendants.**

**BIODIVERSITY LEGAL FOUNDATION,
et al., Plaintiffs,**

**v.**

**Bruce BABBITT, et al., Defendants.**

**Civ. A. Nos. 93–1174, 93–1788.**

United States District Court,
District of Columbia.

Sept. 29, 1995.

Howard I. Fox, Sierra Club Legal Defense Fund, Washington, D.C., Douglas Honnold, Sierra Club Legal Defense Fund, Bozeman, MT, Michael R. Sherwood, Sierra Club Legal Defense Fund, San Francisco, CA, for plaintiffs.

Joseph R. Perella, Environment & Natural Resources Division, U.S. Dept. of Justice, Washington, D.C., for defendants.

## OPINION

PAUL L. FRIEDMAN, District Judge.

A number of environmental organizations and interested individuals bring these companion suits against the Secretary of the Interior, the United States Fish and Wildlife Service ("FWS") and other defendants. Plaintiffs allege that the decision of the FWS not to reclassify the grizzly bear population of the Selkirk ecosystem from "threatened" to "endangered," and its decision that reclassification of the grizzly bear population of the Cabinet/Yaak ecosystem was warranted but precluded, under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*, were arbitrary and capricious, contrary to law or not adequately justified. These consolidated cases are before the Court on cross-motions for summary judgment.

## I. BACKGROUND

In 1975, the Fish and Wildlife Service listed the grizzly bear in the lower 48 states as a "threatened" species. The FWS recognized five distinct populations of grizzly bears in the lower 48 states, including the Selkirk ecosystem and the Cabinet/Yaak ecosystem. In January and February 1991, plaintiffs, by two separate petitions, requested that the FWS reclassify the grizzly bear populations in the Cabinet/Yaak ecosystem and the Selkirk ecosystem from threatened to endangered. Petitions To Change Status of Grizzly Bear Population In Selkirk Ecosystem of

Idaho and Washington, 57 Fed.Reg. 14,372 (1991), Administrative Record ("A.R.") Tab 15.

Section 4 of the ESA, 16 U.S.C. § 1533(a), requires the Secretary of the Interior, through the Fish and Wildlife Service, to determine whether a species is "threatened" or "endangered." A "species" includes a subspecies or any "distinct population segment ... which interbreeds when mature." 16 U.S.C. § 1532(16). A "threatened" species is one that "is likely to become an endangered species within the foreseeable future." 16 U.S.C. § 1532(20). An "endangered" species is one that "is in danger of extinction." 16 U.S.C. § 1532(6). An endangered species receives greater protection than those species listed as threatened.

Any "interested person" may petition the FWS to list, delist or reclassify the status of a species. 16 U.S.C. § 1533(b)(3)(A). Within 90 days after receiving a petition, the FWS must "to the maximum extent practicable" determine whether the petition presents "substantial scientific or commercial information" indicating that the petition action is warranted. 16 U.S.C. § 1533(b)(3)(A). Upon a positive finding in this preliminary review, the FWS conducts a formal review in which it must determine whether the species is endangered or threatened due to habitat destruction, overutilization, disease or predation, inadequate regulatory protections, or other natural or manmade factors. 16 U.S.C. § 1533(a)(1); 50 C.F.R. § 424.11(c) (1993). The FWS must appraise these statutory factors based "solely on the basis of the best of the scientific and commercial data available," 16 U.S.C. § 1533(b)(1)(A), and must determine whether the petitioned action is warranted, not warranted or is warranted but precluded due to work on other pending listing proposals. 16 U.S.C. § 1533(b)(3)(B).

In April 1992, the FWS determined that plaintiffs' petitions presented substantial information to warrant reclassification of the grizzly bear populations in the Selkirk and Cabinet/Yaak ecosystems because the populations "are small and ... increasing human demands exist in the areas, including logging, recreation, and livestock grazing." 57 Fed. Reg. at 14,374 (1992), A.R. Tab 15. In a subsequent formal status review of the populations, however, the FWS determined that reclassification in the Selkirk ecosystem was not warranted and that reclassification in the Cabinet/Yaak ecosystem was warranted but precluded by work on other species having a higher priority for listing. 16 U.S.C. § 1533(b)(3)(B)(iii). The reasoning behind the decision of the FWS is set out in a December 10, 1992, memorandum. The 12–Month Administrative Finding on the Pending Petitions to Reclassify the Cabinet/Yaak and Selkirk Mountains Grizzly Bear Populations ("12–Month Administrative Finding"), A.R. Tab 23. The FWS published notice of its Finding in the Federal Register. Endangered and Threatened Wildlife and Plants; Finding on Petitions to Change the Status of Grizzly Bear Populations in the Cabinet/Yaak Area of Montana and the Selkirk Mountains of Idaho and Washington from Threatened to Endangered, 58 Fed.Reg. 8250 (1993), A.R.Supp. Tab 16.

Pursuant to the citizen suit provision of the ESA, plaintiffs notified the FWS of their intention to initiate a lawsuit and their contention that the reclassification finding for the Selkirk grizzly violated the ESA. 16 U.S.C. § 1540(g)(2). After 60 days had elapsed from the time the plaintiffs gave notice, as required by statute, they filed Civil Action No. 93–1174. 16 U.S.C. § 1540(g)(2). Plaintiffs also gave the required 60–day presuit notice before commencing Civil Action No. 93–1788 with respect to the Cabinet/Yaak grizzly reclassification finding. The two actions were consolidated.[1]

## II. DISCUSSION

### A. Standard of Review

■ Agency decisions under the ESA are reviewed under the Administrative Procedure Act. *See Las Vegas v. Lujan,* 891 F.2d

---

1. Plaintiffs have standing to bring these suits. They have alleged sufficiently concrete and particularized injuries in fact that are fairly traceable to the defendants' actions and redressable by the relief requested. *See Animal Legal Defense Fund, Inc. v. Espy,* 23 F.3d 496, 498 (D.C.Cir. 1994).

927, 932 (D.C.Cir.1989); *Cabinet Mountains Wilderness v. Peterson,* 685 F.2d 678, 685 (D.C.Cir.1982). The reviewing court can set aside such agency actions, findings or conclusions only when they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of the procedures required by law. 5 U.S.C. §§ 706(2)(A), (D).

■ Given the expertise of the FWS in the area of wildlife conservation and management and the deferential standard of review, the Court begins with a strong presumption in favor of upholding decisions of the FWS on the reclassification petitions. *See Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 375–78, 109 S.Ct. 1851, 1860–62, 104 L.Ed.2d 377 (1989). Nevertheless, a reviewing court must undertake a "thorough, probing, in-depth review" of the agency's decision and then decide whether it was "based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415–16, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The agency action must be upheld if the agency has "considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Baltimore Gas & Elec. Co. v. Natural Resources Defense Council,* 462 U.S. 87, 105, 103 S.Ct. 2246, 2256, 76 L.Ed.2d 437 (1983).

### B. Selkirk Grizzly Bears

The FWS has determined that the request to reclassify grizzly bears in the Selkirk ecosystem from threatened to endangered is not warranted. 12–Month Administrative Finding, A.R. Tab 23 at 6. In the 12–Month Administrative Finding supporting its decision, the FWS set forth a determination that human-caused mortality of the bears, which it described as decreasing, is the only factor limiting population growth. It also found presently acceptable rates of grizzly bear reproduction and survivorship as well as effective management programs. In addition, it noted the cooperation between the United States and Canada concerning grizzly bear recovery efforts and concluded that the recovery zone for the grizzlies extends into Canada. *Id.,* A.R. Tab 23 at 4–6. Upon consideration of all of these factors, the FWS concluded that the population "appears to be stable" and that the population is not "at the threshold of extirpation." *Id.,* A.R. Tab 23 at 5.

■ Plaintiffs argue that the FWS failed to consider the requisite statutory listing factors. To decide whether to reclassify a species, the ESA requires the FWS to assess the technical and scientific data in the administrative record against the relevant listing factors and then exercise its own expert discretion in determining whether the reclassification should occur. *See Northern Spotted Owl v. Hodel,* 716 F.Supp. 479, 480 (W.D.Wash.1988). The FWS must examine the following listing factors:

(A) the present or threatened destruction, modification, or curtailment of its habitat or range;

(B) overutilization for commercial, recreational, scientific, or educational purposes;

(C) disease or predation;

(D) the inadequacy of existing regulatory mechanisms; or

(E) other natural or manmade factors affecting its continued existence.

16 U.S.C. § 1533(a)(1); 50 C.F.R. § 424.11(c) (1993). The FWS shall list or reclassify a species if it determines that "any one or a combination" of the factors has caused the species to be endangered or threatened. 50 C.F.R. § 424.11(c). Thus, the FWS must consider each of the listing factors singularly and in combination with the other factors.

Upon an examination of each listing factor, plaintiffs assert that (1) the Selkirk habitat is presently being destroyed and modified by development activities and faces the threat of further destruction and modification; (2) poaching has directly led to overutilization of the grizzly species and that roadbuilding, mining and timbering that has destroyed habitat has led to indirect overutilization of the grizzly for commercial purposes; (3) the Selkirk grizzly bears face a high predation risk from human-caused mortality; (4) existing regulatory mechanisms have failed sufficiently to protect the bear from the threat of

extinction because they do not limit human use and development of the Selkirks, which in turn leads to human/bear encounters that often result in the human-caused death of the bear; and (5) the grizzlies' naturally low population and low reproductive rates negatively affect the bears' continued existence. Plaintiffs therefore maintain that the FWS must reclassify the Selkirk grizzly population as endangered. Defendants respond that the FWS did address the five statutory factors in the 12–Month Administrative Finding, although it did not use the exact language of the ESA, and that its decision is entitled to deference.

■ Defendants maintain that in reviewing the decision of the FWS the Court may examine an August 9, 1993, letter from John L. Spinks, Jr., Deputy Regional Director of the FWS, to Douglas L. Honnold, attorney for the Sierra Club Legal Defense Fund, and that a review of this letter demonstrates that the FWS clearly set forth the grounds for its decision. A.R. Tab 30 (hereinafter "August 9 letter").[2] Plaintiffs argue that the Court should not consider this letter because it provides *post hoc* rationalizations for the FWS' otherwise deficient decision. They maintain that the letter contains arguments and evidence that the agency failed to consider at the time of its decision denying reclassification and only subsequently addressed because plaintiffs pointed out the decision's deficiencies.

■ Review of an agency's decision "is to be based on the full administrative record that was before the [agency] at the time [it] made [its] decision." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. at 420, 91 S.Ct. at 825. In certain limited circumstances, however, a court may consider evidence not included in the administrative record that more fully explicates an agency's decision. *See, e.g., Esch v. Yeutter,* 876 F.2d 976, 991 (D.C.Cir.1989); *American Legion v. Derwinski,* 827 F.Supp. 805, 811–12 (D.D.C.

1993), *aff'd,* 54 F.3d 789 (D.C.Cir.1995). *See also Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. at 420, 91 S.Ct. at 825. In conducting a thorough review, a court may find it necessary to consider explanations regarding the original record and decision, although it may not entertain *post-hoc* rationalizations where no rationale was set forth before.

As already noted, the decision of the FWS that reclassification of the Selkirk population was not warranted rested on its findings that human-caused mortality was the only factor limiting the recovery of the grizzly bears, that grizzly bear reproduction and survivorship rates were adequate, that effective management programs existed, that the United States and Canada were cooperating in the recovery of the grizzlies and that the recovery zone extended into Canada. To the extent that the August 9 letter merely explicates these findings and explains how the findings address each listing factor and does not make new arguments or present new evidence, the Court may and will consider it in determining whether the decision of the FWS was arbitrary and capricious or not in accordance with the law.

Even after considering the August 9 letter, the Court concludes that the FWS inadequately explained the reasoning for its decision not to reclassify the Selkirk grizzlies. Although the August 9 letter elucidates the agency's consideration of some of the five statutory listing factors, it fails to demonstrate that the FWS fully and reasonably considered others. Indeed, with respect to the consideration of factors relating to human-caused mortality, the August 9 letter actually undermines the bases for the decision of the FWS regarding the Selkirk grizzlies.

*1. The present or threatened destruction, modification, or curtailment of the Selkirk Grizzly's habitat or range*

The Court finds that the FWS sufficiently addressed whether there is "present or

---

**2.** This letter was sent to plaintiffs in response to their March 30, 1993, notice of intent to initiate a lawsuit. The FWS informed plaintiffs that it was unable to send the letter to plaintiffs prior to the expiration of the 60 day pre-filing notice period because of the number of issues the plaintiffs had

raised and the resulting time it took to prepare the reply. May 27, 1993, Letter from Donald C. Dobel, Acting Assistant Regional Director of Ecological Services, to Douglas L. Honnold, Sierra Club Legal Defense Fund, A.R. Tab 29.

threatened destruction, modification, or curtailment of [the grizzly's] habitat or range." 16 U.S.C. § 1533(a)(1)(A). In the 12–Month Administrative Finding, the FWS explained that the Interagency Grizzly Bear Guidelines provide special grizzly bear habitat management areas within recovery zones and serve to "accommodate conservation of grizzly bear habitat." 12–Month Administrative Finding, A.R. Tab 23 at 4. The August 9 letter provides a more detailed explication of the Grizzly Bear Guidelines and how they serve to prevent the destruction of critical bear habitat. Pursuant to the Guidelines, the evidence shows that additional land has been set aside as bear habitat and that habitat modifications such as timber extraction have been implemented according to the direction and intent of the Guidelines to minimize disturbances to the grizzlies. August 9 letter, A.R. Tab 30 at 11. The FWS stated that there is "no evidence to suggest that alleged destruction of habitat, or past modifications of the habitat on public of [sic] private lands within the [Selkirk ecosystem] has elevated the level of threat to the grizzly population. . . ." *Id.* Plaintiffs have failed to point to any evidence in the record or to offer any support that shows that this conclusion is not reasonable.[3]

2. *Overutilization for commercial, recreational, scientific, or educational purposes/disease and predation*

██ The Court concludes that the FWS has not sufficiently addressed whether there is overutilization of the Selkirk grizzly population "for commercial, recreational, scientific, or educational purposes" or whether the grizzly population is subject to disease and predation. 16 U.S.C. §§ 1533(a)(1)(B), (C).

In the 12–Month Administrative Finding, the FWS stated that human-caused grizzly bear mortality is a major concern and is the only factor limiting population growth. 12–Month Administrative Finding, A.R. Tab 23 at 5. In the August 9 letter, the FWS reiterated that human-caused mortality is the only relevant factor with respect to whether the grizzlies are overutilized or threatened by predation.[4]

As plaintiffs argue, the conclusion of the FWS that human-caused mortality is decreasing is not supported by the record. The defendants admit as much in the August 9 letter, stating that the "small data set" is too limited to predict a reliable trend as to human-caused mortality. A.R. Tab 30 at 6–7. Indeed, although the 12–Month Administrative Finding's conclusion that human-caused mortality is decreasing is said to be based on "current research," the studies that are included in the administrative record and upon which defendants presumably rely provide no support for predicting any trend regarding human-caused mortality. 12–Month Administrative Finding, A.R. Tab 23 at 5–6; *see also* Wayne L. Wakkinen & Pete Zager, Selkirk Mountains Grizzly Bear Ecology Project, A.R. Tab 23(g); Wayne L. Wakkinen, *et al.,* Selkirk Mountains Grizzly Bear Ecology Project, A.R. Tab 23(h); Robert Weilgus, *et al.,* Population Dynamics of Selkirk Mountains Grizzly Bears, A.R. Tab 23(i). Moreover, as plaintiffs point out, the FWS should have been aware of, but ignored, evidence showing that human-caused mortalities had increased in 1992. *See* Ferman Ranger District Office, Selkirk Ecosystem Summary (Nov. 17, 1992).[5]

---

**3.** In addition, in the 12–Month Administrative Finding the FWS stated that the Selkirk ecosystem encompasses part of British Columbia, Canada. In the August 9 letter, the FWS explained that the contiguous nature of the Canadian portion of the ecosystem provides the grizzly population with sufficient habitat. As discussed *infra* at ——–——, the agency's reliance on the contiguity of the Canadian portion of the ecosystem may require further explanation.

**4.** Plaintiffs argue that an international market in bear parts has increased poaching pressures on the bear population and has led to the overutilization of grizzlies for commercial purposes. As the FWS pointed out in the August 9 letter, plaintiffs offer no evidence, nor was there any

such evidence in the record before the FWS when it considered whether to reclassify the grizzlies, that poaching for bear parts is impeding the recovery of the grizzly population in the Selkirk ecosystem. Because no such evidence was presented to it, the FWS did not have to consider whether poaching implicated this criteria.

**5.** Plaintiffs also contend that the FWS ignored evidence that shows that human-caused mortality is dramatically increasing. Defendants respond that plaintiffs are basing this argument on information that came to light after the FWS decision: five human-caused mortalities which occurred in 1993. The Court agrees that the 1993 information came to light after the FWS

Finally, in the August 9 letter, the FWS backtracked on its finding of decreasing human-caused mortality by conceding its inability to reliably predict the trend for human-caused mortality. By doing so, the FWS undermined its already unsupported conclusion that the Selkirk grizzlies should not be reclassified. Accordingly, the Court concludes that the agency failed to "explain the evidence which is available, and [failed to] offer a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Manufacturer's Ass'n v. State Farm Mutual Insurance Company,* 463 U.S. 29, 52, 103 S.Ct. 2856, 2871, 77 L.Ed.2d 443 (1983). The FWS must reconsider its findings and the available evidence regarding this issue.

### 3. The inadequacy of existing regulatory mechanisms

The FWS explained in both the 12–Month Administrative Finding and, more extensively, in the August 9 letter, how the current regulatory mechanisms, including the Grizzly Bear Recovery Plan, are addressing the major threats to the Selkirk grizzlies. It argues that the grizzly bear's existing protected status lessens the risk it faces from habitat destruction, overutilization and predation. It also maintains that regulatory mechanisms have stabilized the grizzly population. Plaintiffs assert that the management programs have not led to the recovery of the species, that the bear population has decreased to the point where extinction has become even more likely, and therefore the management programs are inadequate. Plaintiffs also pointedly criticize some aspects of the regulations, including a one-person grizzly public relations program, to show the inadequacy of the current protections provided to the bears.

To the extent that the FWS determined that the regulatory mechanisms are adequate because they have held human-caused mortalities in check or have led to their decrease, this finding is unsupported because the FWS' conclusions regarding human-caused mortalities are unsupported. *See supra* Part B.2.

This is not to say that the adequacy of the regulatory mechanisms with respect to habitat preservation and other issues could not be defended on some other basis. Nevertheless, if upon further review the FWS determines that the main limiting factor to the grizzly's recovery, human-caused mortality, has not been addressed by the current regulatory mechanisms, the FWS will have to offer a more adequate explanation from the record to support its finding that the regulatory mechanisms are adequate. 16 U.S.C. § 1533(a)(1)(D).

### 4. Other natural or manmade factors affecting the Selkirk grizzly's continued existence

■ The Court finds that the FWS has sufficiently addressed some, but not all, of the "other natural or manmade factors affecting [the species'] continued existence." 16 U.S.C. § 1533(a)(1)(E). The most significant "other factor" affecting the Selkirk grizzly's continued existence is the small size of the grizzly's population and the resulting threats that face such a small population. August 9 letter, A.R. Tab 30 at 17. There is, however, a significant weakness in the agency's analysis of population size: the FWS did not calculate the size of the population of grizzlies in the Selkirk ecosystem. Instead, the FWS relied on various indicia of population stability and size, some of which are not adequately explained in the record. Moreover, even if the FWS is correct that the grizzly population is stable, this does not necessarily imply that the stable population is large enough to withstand certain threats.[6]

Plaintiffs maintain that the reports the FWS used to support its finding that survivorship and reproductive rates are adequate either came to the opposite conclusion or were inconclusive. The FWS cited to a study included in the administrative record for the proposition that the population is stable, *i.e.,* that the survivorship and reproductive rates are adequate. 12–Month Administrative Finding, A.R. Tab 23 at 5–6;

had made its 12–Month Administrative finding and should not be considered.

**6.** The FWS did not identify a current population number, but disagreed with the plaintiffs' asser-

tion that the entire population in the Selkirk ecosystem contained only 26 to 36 grizzly bears. A.R., Vol. 2, Tab 30 at 2. Plaintiffs maintain that there are no more than 50 bears in this population. A.R. Tab 23(D) at 132; A.R. Tab 9(K) at ii.

August 8 letter, A.R. Tab 30 at 8. While the study did find that the population was stable, it also concluded that "the prognosis for increased growth of the [Selkirk] population is not good" and that "the population may have difficulty recovering." Weilgus, et al., A.R. Tab 23(i) at 15. The FWS ignored this part of the study.

Moreover, the Court finds that the FWS could not properly support its finding that reproductive and survivorship rates are adequate without a better determination of the level or trend of human-caused mortality. The FWS made no showing that the grizzlies' rate of reproduction and survival is sufficient to make up for the loss of grizzly population from human-caused mortality. In light of the uncertainty with respect to human-caused mortality, the Court finds that the conclusions of the FWS regarding the adequacy of reproductive and survivorship rates are not supportable on the record before the Court.

■ Finally, plaintiffs assert that the low population makes the grizzlies more susceptible to sudden extinction from environmental stochasticity (e.g., effects of fires, disease and food availability on annual reproduction or survivorship), or from demographic stochasticity (e.g., variations between individuals that affect reproduction or survivorship), or to gradual extinction from inbreeding depression (the decreased reproduction and survivorship rates observed in the offspring of close relatives). Defendants' response, set out in the August 9 letter, is that the contiguous Canadian ecosystem protects the Selkirk grizzlies from environmental and demographic stochasticity, as well as from inbreeding depression. The FWS maintains that the Selkirk population is a subpopulation of a larger population of grizzlies and that bear migration among the larger population protects the Selkirk grizzlies from the dangers of low population numbers. August 9 letter, A.R. Tab 30 at 1–6.[7]

Although the FWS considered the dangers of low population, its reliance on the contigu-

ity of the Canadian ecosystem may require additional explanation. The FWS has recognized that Canadian grizzly bears suffer the same development pressures as do United States bears. 58 Fed.Reg. 43,856. See also Fund for Animals, et al. v. Babbitt et al., 903 F.Supp. 96, 115 (D.D.C.1995). Defendants assert, however, that there is ample evidence that grizzly bears in the Selkirk ecosystem actually move between the United States and Canada and thus share a larger ecosystem, and plaintiffs do not disagree. See Transcript of Hearing, September 16, 1994, at 13. Since the Court is remanding to the agency for further consideration of "other natural or manmade factors" on other grounds, the Court does not reach the issue of whether the agency's reliance on contiguity with the Canadian ecosystem lacks sufficient basis in the record. The Court assumes that on remand the FWS will give further consideration to this issue.

\*  \*  \*  \*  \*  \*

The Court finds that the FWS failed to sufficiently explain how it exercised its discretion with respect to certain of the statutory listing factors. The Court concludes that the 12–Month Administrative Finding and the entire record before the agency at the time of its decision in conjunction with the August 9 letter shows that the agency failed to fully explain the evidence that was available and drew conclusions that cannot be supported by the evidence in the record. Accordingly, the decision was arbitrary and capricious and must be remanded to the agency for further consideration.

### C. Cabinet/Yaak Grizzly Bears

The FWS found that the present grizzly bear population in the Cabinet/Yaak Recovery Zone is below viability levels and that reclassifying the grizzly bear from threatened to endangered is warranted. 12–Month Administrative Finding, A.R. Tab 23 at 5. The FWS determined, however, that reclassifying the bear was precluded by work on

---

7. The Court agrees with plaintiffs' contention that the August 9 letter presents new evidence and arguments regarding the genetic makeup of the Selkirk grizzly bear population, A.R. Tab 30, at 4, and population claims made by a British Columbian official, A.R. Tab 30, at 2–3. Accordingly, it will not consider this information.

other species having a higher priority for listing. 16 U.S.C. § 1533(b)(3)(B)(iii). \

·If the FWS concurs with a petition for listing or reclassifying a species, it may delay action if it finds that "implementing the petitioned action is precluded by pending proposals to determine whether any species is an endangered species or a threatened species" and that "expeditious progress is being made" on other listing decisions. 16 U.S.C. §´1533(b)(3)(B)(iii). This provision gives the agency discretion to direct its energy and resources to those species most in need of listing, reclassification or delisting. In the Conference Report accompanying the 1982 amendments that added this provision, Congress stated that the FWS has the flexibility to delay commencing a warranted action if "the existence of pending or imminent proposals to list species subject to a greater degree of threat would make allocation of resources to such a petition unwise." H.R.Conf.Rep. No. 97–835, 97th Cong., 2d Sess. 2 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2860, 2862. Congress added that "[t]he listing agencies should utilize a scientifically based priority system to list and delist species, subspecies and *populations* based on the degree of threat, and proceed in an efficient manner." *Id.*

In 1983, the FWS issued Priority Guidelines setting forth a scientifically based priority system for listing, reclassifying and delisting species. 48 Fed.Reg. 43,098 (1983). Through the Guidelines the FWS seeks to make the most appropriate use of the limited resources available to implement the Act. *Id.* Priorities are assigned according to the magnitude and immediacy of the threat the species faces, the FWS' need for further information, the species' recovery potentials, and whether the species belongs to a highly distinctive or isolated gene pool. The Priority Guidelines are meant to inform the listing, reclassification and delisting process rather than to dictate the outcomes of petitioned actions. "Inasmuch as such assessments are subjective to some degree, and individual species may not be comparable in terms of all considerations, the priority systems presented must be viewed as guides and should not be looked upon as inflexible frameworks

for determining resource allocations." *Id.* at 43,098.

The Priority Guidelines establish 12 priority categories. 48 Fed.Reg. at 43,102–03. To decide in which category an organism should be placed, the FWS first determines whether the magnitude of the threat to the organism is high, moderate or low. Next, the FWS evaluates whether the immediacy of the threat is imminent or non-imminent. Finally, the FWS decides whether the organism under consideration is either a member of a monotypic genus, a species or a subspecies, with a subspecies receiving a lower priority ranking than a species. *Id.*

In February 1992, the FWS issued Interim Guidelines to clarify the 1983 Priority Guidelines and to "ensure consistent Servicewide application of the listing priority system." Interim Guidelines on the Endangered Species Listing Priority System (Feb. 11, 1992), A.R.Supplement of Feb. 18, 1994. The Interim Guidelines mandate that only species with a ranking of one or two may be listed except under certain enumerated conditions not applicable here. The FWS placed the Cabinet/Yaak Grizzly, a subspecies, in Category Six. 12–Month Administrative Finding, A.R. Tab 23 at 6. Accordingly, the FWS determined that the Cabinet/Yaak grizzly ranking precluded reclassifying the species from threatened to endangered.

▆▆ Plaintiffs argue that the FWS abused its discretion in applying the 1983 Priority Guidelines and the 1992 Interim Guidelines. They maintain that the FWS improperly acted as if it had no discretion under the Guidelines, asserting that the FWS had discretion to disregard the priority system established by the Guidelines and the Interim Guidelines because they are interpretive guidelines rather than legally binding regulations. Because the FWS did not exercise any discretion and blindly followed the Guidelines, plaintiffs maintain that the FWS failed to provide any support for its decision and therefore abused its discretion. The Court disagrees.

In the 12–Month Administrative Finding, the FWS explained that it was applying its previously announced policies of listing the highest priority species (those in Category

One and Two of the Priority Guidelines) and that the Cabinet/Yaak grizzly bear population, a subspecies, was placed in a priority Category Six. In a September 2, 1992, memorandum, the Grizzly Bear Recovery Coordinator explained why the threat to the grizzly, although high, is non-imminent because of protective measures that have been or are being implemented. Memorandum From Grizzly Bear Recovery Coordinator (Sept. 2, 1992) (exhibit B to Defendants' Memorandum in Support of Summary Judgment).[8] In addition, the FWS had stated in an earlier memorandum that the highest listing priority a particular grizzly population can receive is a three because various grizzly populations, including the Cabinet/Yaak grizzly bears, are listed as subspecies. Memorandum to Grizzly Bear Recovery Coordinator from Assistant Regional Director, Fish and Wildlife Enhancement, Region 6 (May 26, 1992), A.R. at Tab 18; see also 12–Month Administrative Finding, 12–Month Administrative Finding, A.R. Tab 23 at 6; 48 Fed.Reg. at 43,103. The Court concludes that the defendants adequately explained the manner in which they exercised their discretion in following the 1983 Policy Guidelines and provided adequate support for their application of the Guidelines to rank the Cabinet/Yaak grizzly.

■ In addition to examining the agency's setting of priorities for listing or reclassifying species, the Court's role in a challenge to a warranted but precluded finding includes determining whether the FWS has shown that it is working on other pending proposals and that it is making expeditious progress. As Congress provided, "[i]n cases challenging the Secretary's claim of inability to propose an otherwise warranted petitioned action, the court will, in essence, be called on to separate justifications grounded in the purposes of the Act from the foot-dragging efforts of a delinquent agency." H.R.Conf. Rep. No. 97–835, 97th Cong., 2d Sess. 2 (1982), reprinted in 1982 U.S.C.C.A.N. 2860, 2863.

To properly invoke the warranted but precluded finding, the FWS first must show that it is actively working on other pending proposals to determine whether any species is endangered or threatened. Second, it must demonstrate that it is, in fact, making expeditious progress in listing, reclassifying or delisting other species. Third, it must publish its findings regarding whether it is making expeditious progress on other pending proposals. 16 U.S.C. § 1533(b)(3)(B)(iii); H.R.Conf.Rep. No. 97–835, 97th Cong., 2d Sess. 22 (1982), reprinted in 1982 U.S.C.C.A.N. 2860, 2863. The FWS has failed to demonstrate that it is actively working on other pending proposals to list, reclassify or delist other species and that it is making expeditious progress on such other proposals. Having failed to meet either of these statutorily mandated requirements, there is also no evidence that it has published its findings in this regard.

In the past, the FWS has published an annual "Description of Progress on Listing Actions" on which it could reasonably rely to demonstrate that it was making expeditious progress on pending proposals. 56 Fed.Reg. 58,664 (1991); 55 Fed.Reg. 17,555 (1990). By providing this periodic list, the FWS might avoid the need to provide a list of the pending proposals and a statement of its progress each time it made a warranted but precluded finding. Because the FWS last published this document over a year prior to the 12–Month Administrative Finding and has not published this document since, the Court concludes that the FWS has failed to support its statement that it "is making expeditious progress." 12–Month Administrative Finding, A.R. Tab 23 at 6. The FWS has not shown that its decision was based on consideration of the relevant statutory factors nor has it provided a record upon which the Court could determine whether it has done so. See Citizens To Preserve Overton Park, Inc. v. Volpe, 401 U.S. at 416, 91 S.Ct. at 823–24.

8. Plaintiffs contend that the Court should not consider the Memorandum because it is not a part of the administrative record. The defendant has properly supplemented the administrative record with this document and there is no indication that the document was not part of the record before and not relied on by the agency at the time of its decision. Accordingly, the Court will consider the reasoning in the memorandum.

Plaintiffs also argue that to have properly exercised its discretion under the ESA, the FWS should have established that it was financially precluded from reclassifying the Cabinet/Yaak grizzlies. Plaintiffs maintain that section 1533(b)(3)(B)(iii) should be strictly construed to give the FWS discretion to deny listing to a species only if the agency is financially precluded from doing so. They note that defendants did not mention the costs of reclassification in making their decision, but did discuss the funds going towards other grizzly bear recovery efforts, including the delisting of other grizzly populations. Plaintiffs argue that the FWS should have reallocated these funds for reclassifying the Cabinet/Yaak population rather than for delisting other grizzly populations, that the FWS is misallocating the funds that it already has designated for grizzly bear recovery efforts and that the reclassification would entail an insignificant cost.

Plaintiffs ask the Court to read requirements into section 1533(b)(3)(B)(iii) that do not appear in the language of the statute or its legislative history. Section 1533(b)(3)(B)(iii) requires the FWS to show only that there are other pending proposals and that it is making expeditious progress on listing, reclassification or delisting proposals. *See* 16 U.S.C. § 1533(b)(3)(B)(iii). The legislative history indicates that the agency need only consider whether its resources should be used to address proposals involving other species subject to a greater degree of threat and that the agency should use a "scientifically based priority system to list and delist species, subspecies and populations based on the degree of threat." H.R.Conf.Rep. No. 97–835, 97th Cong., 2d Sess. 21 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2860, 2862. Congress nowhere required the FWS to determine that it is financially precluded from taking an action on a petition. Accordingly, the Court will not require the FWS to show that reclassifying the Cabinet/Yaak grizzlies is financially precluded. The FWS did not abuse its discretion by declining to consider reallocating its funds from other grizzly related expenditures.

Because the FWS did not offer sufficient analysis for its warranted but precluded decision, the Court remands this dispute to the agency for further consideration consistent with this Opinion. In particular, the FWS must consider and support any finding that is made in accordance with the 1992 Guidelines and, if it maintains its warranted but precluded finding, it must show that it is making expeditious progress on other pending proposals.

## III. CONCLUSION

For all of these reasons, Plaintiffs' Motion for Summary Judgment is hereby GRANTED in part, and Defendants' Motion for Summary Judgment is DENIED. An Order consistent with this Opinion is entered this same day.

SO ORDERED.

### ORDER

Upon consideration of plaintiffs' motion for summary judgment, defendants' motion for summary judgment, the responses and replies, the administrative record, and for the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that plaintiffs' motion for summary judgment is GRANTED in part and defendants' motion for summary judgment is DENIED; it is

DECLARED that defendants' decision that the reclassification of the Selkirk grizzly bear population as endangered is not warranted is arbitrary and capricious because defendants failed to sufficiently explain how they exercised their discretion with regard to the statutory listing factors and drew conclusions that cannot be supported by the evidence in the record; it is

DECLARED that defendants' decision that reclassification of the Cabinet/Yaak grizzly bear population as endangered is warranted but precluded is arbitrary and capricious because defendants have failed to supply the requisite reasoned analysis and to comply with 16 U.S.C. § 1533(b)(3)(B)(iii); and it is

FURTHER ORDERED that this matter is remanded to the Fish and Wildlife Service, which has 90 days from the date of this Order to provide a reasoned analysis for its

decisions that the reclassification of the Selkirk grizzly bear population as endangered is not warranted and that reclassification of the Cabinet/Yaak grizzly bear population as endangered is warranted but precluded.

SO ORDERED.