D.C. "Jasper" CALTON,
et al., Plaintiffs,

v.

Bruce BABBITT, et al., Defendants.

Biodiversity Legal Foundation,
et al., Plaintiffs,

v.

Bruce Babbitt, et al., Defendants.

Nos. Civ.A. 93–1174(PLF),
Civ.A. 93–1788(PLF).

United States District Court,
District of Columbia.

May 30, 2001.

Howard Irving Fox, Earth Justice Legal Defense Fund, Washington, DC, Douglas L. Honnold, Earth Justice Legal Defense Fund, Bozemon, MO, James S. Angell, Earth Justice Legal Defense Fund, Denver, CO, for Plaintiffs.

Paul J. Boudreaux, Wildlife & Marine, Mark L. Stermitz, U.S. Dept. of Justice, Washington, DC, Christiana P. Perry, Joseph Robert Perela, Charleston, SC, for Defendants.

*MEMORANDUM OPINION*

PAUL L. FRIEDMAN, District Judge.

These cases are before the Court on plaintiffs' motion for summary judgment and defendants' motion to dismiss or for summary judgment. They arise out of petitions filed by plaintiffs to change the status of grizzly bears of the Selkirk and Cabinet–Yaak recovery zones from threatened to endangered under the Endangered Species Act. The Court has issued two opinions in this case, each time remanding the matter to the Fish and Wildlife Service. The motions now before the Court are the result of the second remand. Upon consideration of the arguments raised by the parties in their briefs and at the motions hearing and the entire record in this case, the Court denies plaintiffs' motion for summary judgment and grants defendants' motion for summary judgment.

## I. BACKGROUND

These cases originated as listing petitions filed by plaintiffs asking the Fish and Wildlife Service ("FWS") to reclassify grizzly bears in the Selkirk and Cabinet–Yaak recovery zones from "threatened" to "endangered" under the Endangered Species Act. In its review of plaintiffs' petitions, the FWS concluded that reclassification of the Selkirk bears was not warranted and reclassification of the Cabinet–Yaak bears was warranted but precluded by higher listing priorities. *See Carlton v. Babbitt,* 900 F.Supp. 526, 529 (D.D.C.1995) (*Carlton I*). Plaintiffs filed suit, challenging these decisions. The Court agreed with plaintiffs that the decision of the FWS with respect to each bear population was arbitrary and capricious and therefore remanded the matter to the FWS, instructing the agency to make additional findings or more reasoned analysis. *See id.* at 537.

After further analysis, the FWS reached the same conclusion—that reclassification of the Selkirk bears was not warranted and that the reclassification of the Cabinet–Yaak bears was warranted but precluded by higher listing priorities. *See Carlton v. Babbitt,* 26 F.Supp.2d 102, 105 (D.D.C.1998) (*Carlton II*). Plaintiffs did not challenge the decision of the FWS with respect to the Cabinet–Yaak bears but argued that the decision not to reclassify the Selkirk bears as endangered was arbitrary and capricious and should be remanded to the agency for further consideration. *See id.* at 108–12. The Court agreed with plaintiffs and concluded that the FWS had failed to explain sufficiently how it made its decision with respect to the Selkirk bears and again sent the matter back to the agency for further consideration. *See id.* at 112.

On May 17, 1999, the FWS published a 12–month update and proposed a rule concerning the grizzly bears of these two ecosystems. *See* Endangered and Threatened Wildlife and Plants: 12–Month Finding on Petitions to Change the Status of Grizzly Bear Populations in the Selkirk Area in Idaho and Washington and the Cabinet–Yaak Area of Montana and Idaho From Threatened to Endangered, 64 Fed. Reg. 26,725 (May 17, 1999) ("May 17 Notice"). In the Notice, the FWS changed its position, now concluding that the Selkirk bears should be reclassified as endangered. *See id.* at 26,732–33. As with the Cabinet–Yaak bears, however, the FWS determined that reclassification of the Selkirk bears, while warranted, was precluded by higher listing priorities. *See id.* The bears of both recovery zones have received a listing priority of 6. *See id.*

The Endangered Species Act defines "species" to include "any subspecies of fish or wildlife or plants, and any distinct popu-

lation segment of any species of vertebrate fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532(16). The FWS therefore has adopted a policy outlining factors that must be considered before the agency will consider a population to be a distinct population segment ("DPS"). *See* Policy Regarding the Recognition of Distinct Vertebrate Population Segments Under the Endangered Species Act ("DPS Policy"), 61 Fed.Reg. 4722 (Feb. 7, 1996). After looking at several of the factors outlined in the DPS Policy, the agency concluded in the May 17 Notice that "it may be appropriate to pursue a change in the listing of the grizzly bear which would recognize the Selkirk recovery zone and the Cabinet–Yaak recovery zone as one distinct population segment" rather than as two separate species or subspecies. May 17 Notice, 64 Fed.Reg. at 26,725. The FWS also stated that it "will consider formally recognizing a distinct population segment that would encompass both the Selkirk and Cabinet–Yaak recovery zones in the near future." *Id.*

## II. DISCUSSION

Plaintiffs have filed a motion for summary judgment challenging the DPS analysis contained in the May 17 Notice. Defendants have filed a motion to dismiss or for summary judgment, arguing that the Court lacks jurisdiction to decide plaintiffs' motion because the DPS analysis in question does not constitute "final agency action" under the Administrative Procedure Act. *See* 5 U.S.C. § 704; *see also Franklin v. Massachusetts*, 505 U.S. 788, 796–97, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992) (agency action is final if its impact is "sufficiently direct and immediate" and if it has a "direct effect on ... day-to-day business"; it is not final if it is only "the ruling of a subordinate official" or is "tentative"); *In re Bluewater Network*, 234 F.3d 1305, 1313 (D.C.Cir.2000) ("an agency's pro-

nouncement of its intent to defer or to engage in future rulemaking generally does not constitute final agency action reviewable by this court").

Plaintiffs do not challenge the "warranted but precluded" finding in the May 17 Notice, which defendants acknowledge is a final agency action. Rather, plaintiffs' challenge relates to the DPS analysis which they contend violates the agency's own policy for determining when two populations should be considered a single DPS. According to them, the FWS acted arbitrarily and capriciously by failing to consider two relevant factors under that policy: (1) the physical, physiological, ecological or behavioral barriers between the Selkirk and Cabinet–Yaak bears, and (2) the absence in Canada of effective habitat management regulations and mechanisms. *See* DPS Policy, 61 Fed.Reg. at 4725. Defendants argue that the Court does not need to reach the merits of this argument as the DPS analysis is not final agency action because, as the May 17 Notice clearly states, the FWS is only *considering* treating the Selkirk bears and Cabinet–Yaak bears as a combined population, but it has not reached a final decision on the issue.

Plaintiffs argue that despite conditional language in the May 17 Notice, the DPS analysis is final because the defendants relied on the conclusion that the Selkirk and Cabinet–Yaak bears should be combined when making other decisions regarding the bears in these ecosystems. Plaintiffs contend that there are clear legal consequences that flow from the adoption of this conclusion and that those consequences are potentially disastrous for the long-term survival of these bears. For example, in the administration of the Endangered Species Act, the FWS considers the number of individuals within a population of an endangered or threatened spe-

cies when evaluating the risk faced by that species. *See Carlton II*, 26 F.Supp.2d at 110–11. If, as plaintiffs contend, the Selkirk bears and Cabinet–Yaak bears are separate populations of grizzly bears, considering these bears as a combined population would understate the magnitude or the imminence of the risk posed to the bears of either or both ecosystems. Because the "tentative" DPS analysis has a present legal effect, plaintiffs argue that it is a final agency action that can and should be reviewed by the Court now. *See Bennett v. Spear*, 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (action with legal consequences considered final agency action).

In support of their argument, plaintiffs point to certain language in the May 17 Notice—such as "we find that the grizzly bears in the combined Selkirk/Cabinet–Yaak recovery zone are in danger of extinction"—as evidence that the FWS already is treating these bears as a combined population. *See* May 17 Notice at 26,732. Plaintiffs also cite a FWS notice of review published on October 25, 1999, in which the Selkirk bears are listed with the Cabinet–Yaak bears as a single entry. *See* Endangered and Threatened Wildlife and Plants; Review of Plant and Animal Taxa That are Candidates or Proposed for Listing as Endangered or Threatened; Annual Notice of Findings on Recycled Petitions; and Annual Description of Progress on Listing Actions, 64 Fed.Reg. 57,534, 57,437 (Oct. 25, 1999). Finally, plaintiffs cite an August 2000 letter written by the FWS Regional Director for Region 6 denying

their emergency listing petition for the Cabinet–Yaak bears. *See* Plaintiffs' Notice of Supplemental Information, Exhibit 2 at 2; Exhibit 3.

The May 17 Notice expressly states that "it *may* be appropriate to pursue a change in the listing of the grizzly bear which would recognize the Selkirk recovery zone and the Cabinet–Yaak recovery zone as one distinct population segment"—a statement that is clearly directed to the future, not a statement of current policy. May 17 Notice, 64 Fed.Reg. at 26,725 (emphasis added). The Notice also states that the FWS "*will consider* formally recognizing a distinct population segment that would encompass both the Selkirk and Cabinet–Yaak recovery zones *in the near future.*" *Id.* (emphasis added). Thus, although portions of the Notice may be poorly drafted, the section explaining the present effect of the DPS analysis is clear: the conclusions reached under the DPS analysis have no operative effect unless and until the agency formally adopts the DPS analysis through a rulemaking. As for the letter from the Regional Director of Region 6, its language also makes quite clear that as of August 2000 the agency was treating the two bear populations as separate and distinct.[1]

Representations made by defendants during the course of this litigation have provided further assurance to the Court that the language in the May 17 Notice is the result of poor drafting and not evidence that the FWS has already reached conclusions under its DPS analysis. In a declaration submitted to the

---

1. In this case (and in others involving suits against the FWS), the agency explains that its budget to administer the Endangered Species Act is woefully inadequate and that its options have been limited in part because of litigation by environmental groups. It is worth noting that plaintiffs' present challenge is, at least in part, a result of the failure by the FWS to state clearly the basis for its decision, as is required by law. The ambiguity in the May 17 Notice may be a result of these budgetary constraints, but if the FWS wishes to decrease its litigation costs, it would be well-advised to draft notices that clearly state the analytical and factual basis for its decisions.

Court, Jamie Rappaport Clark, former Director of the FWS, has explained that the DPS analysis in the May 17 Notice is only preliminary; until a decision is made through the rulemaking process, the FWS "will continue to treat the two recovery populations as separate entities." Defendant's Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss or for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment "Regarding Defendants' May 17, 1999 Finding", Exhibit B, Declaration of Jamie Rappaport Clark ¶¶ 2–4. At the motions hearing, defense counsel represented numerous times that the DPS analysis is tentative and that until a final rule is promulgated, the Selkirk bears will be treated as a population separate and distinct from the Cabinet–Yaak bears. *See* October 13, 2000, Motions Hearing Transcript at 6–9, 26–27, 32, 34–35. Furthermore, two letters sent from the FWS Regional Director for Region 6 in response to plaintiffs' emergency listing petition state that the Selkirk and Cabinet–Yaak bears have been and will continue to be evaluated separately. *See* Plaintiffs' Notice of Supplemental Information, Exhibits 2 and 3. Absent a showing of bad faith, representations made by an administrative agency are entitled to a presumption of good faith. *See FTC v. Invention Submission Corp.,* 965 F.2d 1086, 1091 (D.C.Cir. 1992).

■ Defendants' position is bolstered by the fact that even before it published the DPS analysis the FWS had concluded that reclassification for the Cabinet–Yaak bears was warranted but precluded with a listing priority of 6—the same listing priority now given to both the Selkirk and Cabinet–Yaak bears. *See* Endangered and Threatened Wildlife and Plants: Finding on Petitions to Change the Status of Grizzly Bear Populations in the North Cascades Area of Washington and the Cabinet–Yaak Area of Montana and Idaho from Threatened to Endangered, 63 Fed.Reg. 30,453, 30,453–54 (June 4, 1998). Thus, to the extent that plaintiffs fear that consideration of the DPS analysis may have adversely effected the listing priority for the Cabinet–Yaak bears, those fears are unfounded. Finally, a very recent annual review published by the FWS continues to list the Selkirk bears and the Cabinet–Yaak bears as separate species—further demonstrating that the DPS analysis in the May 17 Notice is only tentative. *See* Endangered and Threatened Wildlife and Plants; Annual Notice of Findings on Recycled Petitions, 66 Fed.Reg. 1295, 1298 (Jan. 8, 2001). The Court therefore concludes that the FWS did not rely on the DPS analysis in making listing decisions concerning either the Selkirk bears or the Cabinet–Yaak bears or that the FWS currently is treating the Selkirk and Cabinet–Yaak bears as a single population. It follows that the DPS analysis is not a final agency action, barring judicial review at this time.

Plaintiffs remain concerned, however, that future decisions made by the FWS with respect to the grizzly bears of these two regions may be adversely influenced by the determination that these bears are a combined population. If plaintiffs believe that in response to a later filed emergency petition or in its annual review of these species, the FWS has considered these bears as a combined population in reaching its decision, plaintiffs may take appropriate action at that time. Obviously, if the FWS issues a notice that it intends to promulgate a final rule combining the populations of the Selkirk and Cabinet–Yaak bears, plaintiffs will be able to participate in the rulemaking and can challenge a final rule combining these two populations into a single DPS. Possible challenges to such speculative actions are not before the Court today. Even if they

were, these challenges would not fall within the scope of this litigation—namely, whether the Selkirk and Cabinet–Yaak bears should be reclassified from threatened to endangered.

A separate Order and Judgment consistent with this Memorandum Opinion will be issued this same day.

SO ORDERED.

### ORDER AND JUDGMENT

This matter is before the Court on plaintiffs' motion for summary judgment and defendants' motion to dismiss or for summary judgment. Upon consideration of the arguments raised by the parties in their briefs and at the motions hearing and the entire record in this case, and for the reasons stated in a separate Memorandum Opinion issued this same day, it is hereby

ORDERED that plaintiffs' motion for summary judgment is DENIED; it is

FURTHER ·ORDERED that defendants' motion for summary judgment is GRANTED; it is

FURTHER ORDERED that this case is dismissed from the docket of this Court; it is

FURTHER ORDERED that JUDGMENT is entered for defendants; and it is

FURTHER ORDERED that this Order and Judgment shall constitute a FINAL JUDGMENT in this case. This is a final appealable order. *See* Rule 4(a), Fed. R.App.P.

SO ORDERED.